(No. 30889.—

THE PEOPLE *ex rel.* Illinois State Bar Association *et al.,* Relators, *vs.* FRANK SCHAFER, Respondent.

*Opinion filed September 22, 1949.*

CHARLES LEVITON, ROSS S. WELCH, GEORGE R. LYON, and JOHN F. SEMBOWER, all of Chicago, and DONALD GRAY, of Kankakee, for relators.

FRANK SCHAFER, *pro se,* respondent.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

September 21, 1948, leave therefor having been granted, the relators, Illinois State Bar Association and the Chicago Bar Association with certain of their respective members serving on respective committees on unauthorized practice of law, and as individuals, filed in this court an information duly verified charging the respondent, Frank Schafer, with having practiced law in the State of Illinois without a license. October 18, 1948, respondent filed an unverified answer in denial of the information. The cause was referred to Rupert F. Bippus, a master in chancery of the circuit court of Cook County, as commissioner of this court to take the proofs and report his conclusions of law and fact.

March 17, 1949, the commissioner gave notice to the parties of his report and advised them that objections thereto could be filed up to 11 A.M. April 1, 1949. No objections were presented and the report was filed in this court the following day. The commissioner made findings of fact from which he concluded that the activities of respondent as charged in the information and proved by the evidence constituted illegal usurpation of the privileges of an attorney at law, and that the respondent was guilty of practicing law in the State of Illinois without a license for which he should be held in contempt of this court.

The respondent's failure to object to the findings and conclusions of the commissioner would warrant our assuming that he was convinced they were justified by the record.

We have nevertheless studied the entire record carefully and shall enumerate briefly the facts as disclosed by the evidence.

Respondent was a licensed real-estate and insurance broker but had no license to practice law in this State. He was charged with customarily engaging in the preparation of deeds, contracts and mortgages in real-estate transactions in which he was the procuring agent and for which he received a broker's commission. He was also charged with customarily preparing like instruments in cases where he was not the procuring agent and in which instances he made a charge for that service. He was also charged specifically with advising one Margaret Culp concerning the disposition of her estate and in preparing deeds and other instruments in connection therewith for which he charged a fee.

Margaret Culp made her will on November 15, 1945, but thereafter, in August, 1946, consulted respondent relative to the disposition of her estate. He advised her that it was not necessary to have a will, that he could handle the disposition of her real estate by the execution of deeds, one conveying the real estate to a "dummy" of his selection who would immediately convey the same property by separate deed to Mrs. Culp and her daughter, Ellen Mary Danielson, as joint tenants. He said this was in accord with her desire and instructions. These deeds were prepared by respondent and executed by the respective grantors. He also prepared a promissory note for $500 which he had Mrs. Culp sign in favor of her son, Joseph Culp. These instruments were held by him until after Margaret Culp's death on January 31, 1947, in accordance with her instructions, as he said.

April 4, 1947, respondent wrote Joseph Culp advising him of the deeds and of the fact that a check in the amount of $500 payable to him and his wife was in respondent's hands and would be delivered immediately upon receipt of

the enclosed document signed by both of them and executed before a notary public. The document was an unexecuted quitclaim deed from Joseph Culp and wife in favor of his sister covering the real estate in question. Respondent advised the son in this letter that there would be no further obligation on his part to pay any expenses such as funeral, cemetery, etc., "except one-fourth of my fee, which is One Hundred Dollars ($100.00), and your share Twenty-five Dollars ($25.00). This amount I would like you to send at the time the enclosed document is returned, so that when I send you the Five Hundred Dollar check the matter will be completely closed."

The evidence shows that respondent followed the practice of preparing deeds, mortgages and contracts in connection with real-estate sales where he was the procuring broker but charged no fee for the preparation of those instruments, and that he also followed the practice of preparing like instruments in real-estate transactions where he was not the procuring broker and in those instances charged a fee for that service.

After Margaret Culp's death her daughter employed counsel in connection with the estate. This attorney telephoned the respondent requesting that he send to the daughter or to her attorney all the papers having to do with the Margaret Culp estate. Respondent replied in substance that he had promised Margaret Culp to handle the matter for her after her death and see that it was disposed of according to her wishes and told her that it was not necessary for her to have a will, that he would take care of it by deeds instead of a will. He told the attorney that it was not necessary to file a will, that the only reason lawyers wanted a will filed was that they could make a fee, that he wanted to save Marie Danielson all the money he could, and all that was necessary for her to do was to pay him a fee, and her brother to send his share of the

fee and that he would then file the deeds and that it would not be necessary to probate the estate of Margaret Culp.

After it became apparent that the son was not going to execute the quitclaim deed sent him by respondent, nor pay a fee, the respondent filed the deeds for record and thereafter sent them to the attorney for the personal representative. He also returned the $500 check to the daughter.

Respondent testified that he had been in the real-estate business for twenty-nine years; that he had known Margaret Culp for twenty-five years. His position is that he merely served her as an old friend by filling in the blanks of printed forms of deeds and note. He said she made a request that he change the title from her name into a joint tenancy between herself and daughter; that he knew nothing about her will; that she wanted her son to have $500 and the daughter to receive the balance of her estate after expenses; that he prepared the deeds changing the title and notarized the signatures thereon; that he also had her sign a note for $500 in favor of the son; that after Mrs. Culp died the daughter brought in a check for $500 for the son, to cover the note.

Respondent's answers to questions propounded to him were rather evasive. He was asked whether or not he ever prepared contracts for the parties in real-estate transactions where he was not the procuring agent. He answered: "Very seldom." In answer to the question as to how many times he had prepared contracts for the parties during the twenty-nine years of his business, he said: "I have no idea." When asked if it would be more than half a dozen times his answer was "I suppose." Asked if he did not recall making the statement to several parties that he had prepared contracts in a large number of instances, he answered: "I don't recall exactly what was said." When asked if he did not remember saying that he had made a practice of preparing deeds, mortgages and contracts and

charging a fee to the parties therefor in instances where he was not the broker in the deal, he answered: "Well, I don't believe so, that is not a practice." Pressed further for an answer as to his practice in preparing contracts and deeds for parties where he was not the broker, he finally answered: "I have done about everything that is on the books as far as real estate is concerned."

Respondent explained his charge of $25 to Joseph Culp by saying he made the charge for psychological effect. Knowing that Culp was stubborn he thought he would sign the quitclaim deed to his sister if he felt compensated therefor by not paying the respondent.

Respondent takes the position that because he is a real-estate broker he has a lawful right to do any legal work in connection with real-estate transactions, especially in drawing of real-estate contracts, deeds, mortgages, notes and the like. There is no doubt but that he has engaged in these practices over the years and has charged for his services in that connection. The Culp incident, however, is the only specific case shown where respondent attempted advice and service in connection with the settlement of estate matters.

The practice of law involves not only appearance in court in connection with litigation but also services rendered out of court, and it includes the giving of advice or the rendering of any services requiring the use of legal skill or knowledge, such as preparing a will, contract or other instrument, the legal effect of which, under the facts and conditions involved, must be carefully determined. *People ex rel. Chicago Bar Ass'n* v. *Tinkoff,* 399 Ill. 282; *People ex rel. Illinois State Bar Ass'n* v. *Peoples Stock Yards State Bank,* 344 Ill. 462, and cases cited.

It would be difficult, if not impossible, to lay down a formula or definition of what constitutes the practice of law. "Practicing law" has been defined as "Practicing as an attorney or counselor at law, according to the laws and

customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill." Without adopting that definition, we referred to it as being substantially correct in *People* v. *Peoples Stock Yards State Bank,* 344 Ill. 462.

In *Chicago Bar Ass'n* v. *United Taxpayers,* 312 Ill. App. 243, Teeter, a certified public accountant, contended that he had the right to give opinions and advice concerning the procurement of refund of taxes illegally collected and to file claims with the Department of Finance on behalf of others for refunds because such advice and service were incidental to the exercise of his rights as a certified public accountant and that these did not constitute the practice of law. The court held against his contention and enjoined the doing of the acts complained of.

In *People* v. *Tinkoff,* 399 Ill. 282, the respondent counseled with grantors in a certain warranty deed and afterward prepared for them a notice which was entitled a rescission of oral contract and warranty deed executed February 24, 1946. The names of the parties giving the notice were signed to it by the respondent as "Real Estate Agent." The attempted rescission grew out of some alleged fraud and concluded with a warning that if no reply was received to the communication within three days it would be cause for instituting legal proceedings to set aside the entire transaction. Referring to the respondent in that case we said "When he prepared the notice of rescission of oral contract and warranty deed, he was assuming control of a matter for the Harleses that involved their legal and equitable rights in a piece of property. It was of such a nature as to call for a selection of procedure that was to be followed and the only conclusion to be drawn from the transaction is that respondent counseled and advised with the Harleses as to the selection they should make and the

course to follow." It was contended by respondent in that case that the notice was prepared pursuant to his investigation of the Harles's income-tax matters. We there held that respondent was practicing law when he counseled with them in reference to said notice and was so engaged when he drafted it.

*Clark* v. *Reardon,* 231 Mo. App. 666, in holding that one who prepares certain legal documents is practicing law, says: "Anyone who wants to pay the price may purchase a set of form books and read and copy them. He may use them in his own business if he so desires. But when he advises others for a consideration, that this or that is the law, or that this form or that is the proper form to be used in a certain transaction, then he is doing all that a lawyer does when a client seeks his advice. The mere copying of the form is usually done in a lawyer's office by a stenographer; but the stenographer must be told by the lawyer what to copy, and the client relies upon the advice of the attorney as to whether the form will accomplish the desired result in this particular case."

In *Gustafson* v. *Taylor & Sons,* 138 Ohio St. 392, 35 N.E. 2d 435, it was held that there was no practice of law upon the part of a real-estate broker in merely filling in blank forms of contracts for the purchase of real estate which at his request had been prepared by a regularly admitted attorney at law, where the act did not require the exercise of legal skill or constitute more than the clerical service of recording the stated agreements of the parties to the transactions which he was handling or exceed the supplying of simple factual material, such as the date, the price, the name of the purchaser, the location of the property, the date of giving possession and the duration of the offer, which service required no more than ordinary business intelligence, and not the skill peculiar to one trained and experienced in the law.

In *People* v. *Sipper*, 61 Cal. App. Supp. 2d 844, 142 Pac. 2d 960, a real-estate broker advised the parties who were borrowing money on real estate to pay off an incumbrance thereon as to the kind of legal documents they should execute which involved a mortgage and for which he made a charge. It was held that he did more than mere clerical work and that his acts amounted to practicing law, involving as they did the determination for the parties of the kind of legal documents they should execute in order to effectuate their purpose.

To cite additional cases would unduly lengthen this opinion and could serve no purpose because each case is so largely controlled by its own peculiar facts. There is a difference of opinion in the various State courts in cases involving facts similar to those in the present one but the weight of authority seems to be that if the advice given or the service performed requires legal skill or knowledge, or more than ordinary business intelligence, it constitutes the practice of law.

In the Culp instance these questions among others should have been considered: What constitutes proper delivery of the deeds? Who has the right to control the delivery? When will the deeds become effective? If not until Margaret Culp's death why name her as a grantee in joint tenancy with her daughter? What effect will her death have upon the title? Lawyers may readily answer these questions, whereas laymen would not have the answers.

With reference to preparing deeds, notes, mortgages and contracts in real-estate transactions, respondent seems to consider those acts as being more or less mechanical and routine requiring no legal knowledge or skill. Many titles are complex and complicated. They have grown more so from time to time and will not likely become less complex in the future. Those who prepare instruments which affect titles to real estate have many points to consider. A trans-

action which at first seems simple may upon investigation be found to be quite involved. One who merely fills in certain blanks when other pertinent information should be elicited and considered is rendering little service but is acting in a manner calculated to produce trouble. When filling in blanks as directed he may not by that simple act be practicing law, but if he elicits the proper information and considers it and advises and acts thereon he would in all probability be practicing law. In other words, if his service does not amount to the practice of law it is without material value; but if it is of material value it would likely amount to the practice of law. The public should be protected from falling into the hands of one not skilled in the laws of conveyancing when seeking advice or service having to do with real-estate titles.

From the facts in this case, we are constrained to hold respondent guilty of the unauthorized practice of law for which he is adjudged to be in contempt of this court. It is therefore our judgment that respondent pay to the clerk of this court a fine in the sum of one hundred dollars and the costs of this proceeding.

*Respondent found guilty of contempt.*