(No. 53998.—

JOHNNY SCOTT *et al.*, Appellees, v. THE DEPART-
MENT OF COMMERCE AND COMMUNITY AF-
FAIRS *et al.,* Appellants.

*Opinion filed February 3, 1981.*

44

SIMON, J., took no part.

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield (Jon E. Tweedt, Assistant Attorney General, of counsel), for the People.

Roger L. Vetter, of Belleville, for appellee Johnny Scott.

Edward Neville, of East St. Louis, for appellees William Stokes and Willie L. Dancy.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On March 19, 1980, plaintiff Johnny Scott, a commissioner of the East St. Louis Housing Authority, filed a petition seeking a temporary restraining order, a temporary injunction, a permanent injunction and declaratory relief to prevent the Department of Commerce and Community Affairs (Department) from conducting a hearing to remove plaintiff and three other commissioners from the Housing Authority pursuant to section 4 of the Housing Authorities Act (Ill. Rev. Stat. 1979, ch. 67½, par. 4). The other commissioners, William Stokes, Larona

J. Morris and Willie L. Dancy, were allowed to intervene as plaintiffs. Following a March 24 hearing the circuit court of St. Clair County granted a preliminary injunction enjoining the Department from proceeding with the hearing on the ground that section 4 of the Housing Authorities Act was unconstitutional. The Department sought an interlocutory appeal to the appellate court, and, because the statute had been found unconstitutional, the appeal was transferred here pursuant to our Rule 302(a). 73 Ill. 2d R. 302(a).

The Housing Authorities Act (Ill. Rev. Stat. 1979, ch. 67½, par. 1 *et seq.*) provides for the appointment of five commissioners, to staggered five-year terms, by the presiding officer of a city, village, incorporated town or county in which the particular authority is created. (One of the five commissioners had not been in office during the period here involved.) The commissioners, whose appointment must be approved by the Department, serve without compensation. Their removal is provided for in section 4 of the Act:

> "Whenever it shall appear to the Department of Local Government Affairs that a commissioner is incompetent or guilty of neglect of duty or malfeasance, the Department of Local Government Affairs shall require such commissioner to appear before it to show cause why he should not be removed from office. At least fifteen days' written notice of such a hearing shall be given to the commissioner whose conduct is in question and to all other members of the Authority. At the hearing the commissioner may be represented by counsel and may appear personally and present such pertinent evidence as he wishes or as the Department of Local Government Affairs may request.
>
> If after a hearing the Department of Local Government Affairs determines that a commissioner has been incompetent or has been guilty of neglect of duty or malfeasance, it shall remove such commissioner from the Authority within seven days, and there shall thereupon be deemed to be a vacancy of such office." (Ill. Rev. Stat. 1979, ch. 67½, par. 4.)

(The Department of Local Government Affairs was abolished on October 1, 1979, and its duties transferred to the Department of Commerce and Community Affairs by Illinois Executive Order No. 3 (1979) preceding Ill. Rev. Stat. 1979, ch. 127, par. 1.)

The plaintiffs had been served on January 28, 1980, with a "Notice of Charges" and a "Notice of Removal Hearing," apparently prompted by the report of a housing authority task force formed by the mayor of East St. Louis. The "Notice of Charges" was as follows:

"NOTICE OF CHARGES

In the Matter of:

The Commissioners of )
the East Saint Louis )
Housing Authority )

To: Johnny Scott;
    William Stokes;
    LaRona J. Morris, and;
    Willie Levell.

You are hereby notified that pursuant to Section 4 of the Housing Authorities Act, Ill. Rev. Stat., 1979, Ch. 67½, Section 4, you are charged with incompetence, neglect of duty or malfeasance in the performance of your duties as a commissioner of the East Saint Louis Housing Authority. You are required to appear at the removal hearing scheduled on the 29th day of February, 1980 to show cause why you should not be removed as a commissioner for the following acts of incompetence, neglect of duty or malfeasance:

1. that at the end of fiscal year 1977 routine expenses of the Housing Authority exceeded the budget by $366,169.84 and homeownership expenses exceeded the budget by $53,639.80 in violation of Section 407, Article 14 of the terms and conditions in Part 2 of the Annual Contributions Contract;

2. that at the end of fiscal year 1978 routine expenses of the Housing Authority exceeded the budget by $352,320 and administrative expenses exceeded the budget by $130,129 in violation of Section 407, Article H of the

terms and conditions in Part 2 of the Annual Contributions Contract;

3. that the Housing Authority's personnel policy is outdated and does not reflect compatibility with 'pertinent practices' as required by the U.S. Department of Housing and Urban Development's handbook HM7401.1, Chapter 5, Section 1;

4. that the Housing Authority's personnel files contain no evidence that its administrative salaries are comparable to those of like positions in the local community;

5. that the Housing Authority's travel allowances exceeded the amount specified in its travel policy;

6. that the Housing Authority's Disposition policy is not being followed;

7. that the Housing Authority has not implemented a uniform schedule of charges to tenants for repair services other than normal wear and tear;

8. that the Housing Authority has an unreasonably high number of outstanding obligations in its accounts receivable;

9. that the Housing Authority did not adequately preserve the minutes of the Board of Commission meetings;

10. that the Housing Authority has allowed its maintenance program to decline to an unacceptable point;

11. that the Housing Authority has not followed the terms of the Memorandum of Accord effective 1971; and

12. that a contract for installing guttering was awarded by the Housing Authority to a firm whose bookkeeper is one of the Commissioners on the Housing Authority although there were lower bids made by other reputable firms, in violation of an Act to prevent Fraudulent and Corrupt Practices in the Making or Accepting of official appointments and contracts by public officers, Ill. Rev. Stat., 1979, Chapter 102, Section 3.''

The "Notice of Removal Hearing" specified the time and place of the hearing, informed the commissioners that the hearing would be conducted in accordance with section 10 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1010), that they had the right to counsel and to present evidence and argument, and that a decision on their removal would be forthcoming

within seven days by certified mail. Relevant provisions of that act include section 12 (Ill. Rev. Stat. 1979, ch. 127, par. 1012), providing for use of civil evidence rules, cross-examination and judicial notice, and section 13 (Ill. Rev. Stat. 1979, ch. 127, par. 1013), requiring that, when the decision maker has not heard the case or read the record, a proposal for decision must be served upon the parties and the party adversely affected afforded an opportunity to file a brief in opposition. Final orders must contain findings of fact supported by concise statements of the supporting facts and separately stated conclusions of law. *Ex parte* communications in contested cases are barred by section 15 (Ill. Rev. Stat. 1979, ch. 127, par. 1015).

On February 14, plaintiff Scott filed with the Department a "Request for Production of Documents," a "Motion to Dismiss Charges" and a "Motion to Disqualify Hearing Officer." These motions were denied by the assistant director of the Department in a February 19 ruling based in part upon his statements that the burden of proof under section 4 of the Housing Authorities Act is upon the commissioners to show cause why they should not be removed from office, and that neither the Housing Authorities Act nor the Illinois Administrative Procedure Act required discovery or production of the documents sought by the commissioners.

On the same date that the petition was filed, the St. Clair County circuit court issued a temporary restraining order precluding the Department from proceeding with the removal hearing. At the subsequent hearing on the issuance of an injunction the court found section 4 to be unconstitutional because it placed the burden of proof upon the plaintiffs, the standard for removal lacked definiteness, and the statute contained no provision for discovery.

We need not dwell at length upon the plaintiffs' contention that the standard for removal of a commissioner

who is found to be "incompetent or guilty of neglect of duty or malfeasance" is unconstitutionally vague. A statute is, of course, presumed to be valid, and the burden is on the party challenging it to establish its constitutional invalidity. (*Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, *appeal dismissed* (1980), 444 U.S. 1062, 62 L. Ed. 2d 744, 100 S. Ct. 1001.) We have just this term considered and upheld the validity of the standard "Improper, unprofessional or dishonorable conduct" as a basis for license revocation as against the contention that it was unconstitutionally vague and uncertain. (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 506, 509.) We there indicated that the due process clauses of the Illinois and Federal constitutions are not violated if the duty imposed by the statute is described in sufficiently definite terms to serve as a guide to those who must comply with it.

Earlier language by this court is also appropriate: "Due process does require that a person of ordinary intelligence be given a reasonable opportunity to know what is prohibited. [Citation.] A statute is not rendered unconstitutionally vague, however, merely because the imagination can conjure up hypothetical situations in which the meaning of some terms may be in question." (*Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 513.)

While the statute in question has not previously been the subject of appellate interpretation, an essentially identical standard in article V, section 10, of the 1970 Illinois Constitution provides:

"The Governor may remove for incompetence, neglect of duty, or malfeasance in office any officer who may be appointed by the Governor."

In *Lunding v. Walker* (1976), 65 Ill. 2d 516, this court considered the extent of the removal authority conferred upon the Governor. While the members of the court were

not in agreement on that issue, there was no suggestion by the parties or in the majority or dissenting opinions that the specified causes were impermissibly vague. (See also *Adams v. Walker* (7th Cir. 1974), 492 F.2d 1003.) We conclude that the specification in the Act of the causes for removal of the commissioners of a housing authority is not impermissibly vague and uncertain.

The question remains whether the hearing provided by section 4 comports with the requirements of due process. Plaintiffs urge that the charges against them are not sufficiently clear and specific to enable them to prepare a defense, that they are entitled to prehearing discovery, an impartial tribunal, and that the burden of proof is not, as they were advised by the Department, upon them to show cause why they should not be removed.

There is, of course, no doubt that "[a]dministrative as well as judicial proceedings are governed by the fundamental principles and requirements of due process of law. [Citations.]" (*Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 454.) Due process is, however, a flexible concept. " ' "[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.] '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " (*Mathews v. Eldridge* (1975), 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902.) This court, in considering the right of laid-off civil service employees to pre-layoff hearings, has said:

> "[T]he requirements of due process are necessarily proportional to the weight of that interest [continued employment] in balancing it against the countervailing interests of society in effective and efficient governmental operation." (*Powell v. Jones* (1973), 56 Ill. 2d 70, 78.)

See also *Board of Regents v. Roth* (1972), 408 U.S. 564,

33 L. Ed. 2d 548, 92 S. Ct. 2701 (nontenured teacher at a State university did not have sufficient property or liberty interest in reemployment to require a hearing on the decision not to rehire him); *Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (college teacher entitled to hearing if *de facto* tenure system created a property interest in continued employment, and nonrenewal in retaliation for exercise of constitutional right of free speech is impermissible); K. Davis, Administrative Law of the Seventies sec. 7.00 (1976).

We would not necessarily conclude that the nature of the offices which the commissioners hold is such as to entitle them, under the due process standards articulated in the cited cases, to the trial type hearing for which they contend. The commissioners draw no compensation and serve only as part-time officers of the housing authority. While appointed for fixed terms, they are removable pursuant to the statutory provisions. Because those provisions specifically afford plaintiffs a hearing, however, our concern is solely with its scope.

We believe the Department has misconceived the purpose and intent of the hearing provided by section 4 of the Housing Authorities Act and section 10 of the Illinois Administrative Procedure Act. As we understand the Department's argument, it interprets the statutory provisions as requiring only that the Department inform the commissioners of the reasons why it proposes their removal; the commissioners are then entitled to a hearing at which they bear the burden of establishing the absence of cause for their removal. The Department, as we understand the contention, has no obligation to call witnesses or introduce proof beyond the statement of charges.

The Department's concept seems to us to overlook relevant provisions of the Illinois Administrative Procedure Act which impose upon the Department a greater obligation. Section 12 of the Act deals with contested cases and

specifically states that the rules of evidence in civil cases shall be followed and that "a party may conduct cross-examination required for a full and fair disclosure of the facts." (Ill. Rev. Stat. 1979, ch. 127, par. 1012.) This is virtually identical to the provisions of the Model State Administrative Procedure Act from which our act was adapted. (Ill. Ann. Stat., ch. 127, par. 1001, at 308 (Smith-Hurd Supp. 1980).) Implicit in the provision for cross-examination is the requirement that there be witnesses and testimony presented by the agency, for otherwise the right of cross-examination is meaningless. Similarly, in our judgment, application of "the rules of evidence in civil cases" imposes upon the Department the obligation to establish, in the first instance, a *prima facie* case. "Although the statute does not specifically place any burden of proof on [the complainant], the courts have uniformly imposed on administrative agencies the customary common-law rule that the moving party has the burden of proof. (See cases cited at page 355, 1 Cooper State Administrative Law (1965), \*\*\*.)" *International Minerals & Chemical Corp. v. New Mexico Public Service Com.* (1970), 81 N.M. 280, 283, 466 P.2d 557, 560. See also *Smith v. Department of Registration & Education* (1952), 412 Ill. 332; *Wonder Life Co. v. Liddy* (Iowa 1973), 207 N.W.2d 27, 31; *Gourley v. Board of Trustees* (S.D. 1980), 289 N.W.2d 251, 253.

We note that plaintiffs concede that the charges, which they argue are insufficient to enable them to prepare a defense, need not be drafted with the same refinements and selectivity as pleadings in a court of record. We agree. (*Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450; *Hall v. Lyons* (1979), 71 Ill. App. 3d 1023.) The statement of charges was, in our judgment, sufficient to advise plaintiffs of the nature and substance of the complaints against them. If they felt additional details were necessary for their defense, a bill of

particulars could have been sought.

Plaintiffs' contention that their request to produce documents was wrongfully denied is unsupportable. Neither section 4 of the Housing Authorities Act nor the Illinois Administrative Procedure Act contains any reference to prehearing discovery. We have repeatedly held it is not constitutionally required, even in particular criminal proceedings (*People v. DeWitt* (1979), 78 Ill. 2d 82; *People v. Schmidt* (1974), 56 Ill. 2d 572). While Professor Davis advocates that courts might well hold that an agency must provide prehearing discovery even in the absence of statutory requirements (K. Davis, Administrative Law of the Seventies sec. 8.15 (1976)), we do not believe the nature of plaintiffs' interest is such as to justify us in so holding here. Public interest in the efficient functioning of a State agency such as the Department and local housing authorities requires an effective and efficient means of removing incompetent governing officers or those who betray their public trust. To delay removal proceedings by protracted discovery and hearing procedures could unreasonably impede the functions of State government. Consequently, other than the obligation to disclose exculpatory evidence in the Department's possession (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194), we believe plaintiffs' request was properly denied in the circumstances of this case. We do not, of course, express any opinion regarding the scope of discovery which due process might require in a different environment.

Plaintiffs' final argument is, in essence, that they are entitled to a hearing before an impartial tribunal, and that due process requirements preclude the Department from serving as both prosecutor and judge. We do not agree. It is universally held that a " 'fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison* [(1955), 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625.] This applies to administrative agencies

which adjudicate as well as to courts. [Citation.]" (*Withrow v. Larkin* (1975), 421 U.S. 35, 46, 43 L. Ed. 2d 712, 723, 95 S. Ct. 1456, 1464.) However, "[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process ***." 2 K. Davis, Administrative Law Treatise sec. 13.02, 175 (1958), quoted in *Withrow v. Larkin* (1975), 421 U.S. 35, 52, 43 L. Ed. 2d 712, 726, 95 S. Ct. 1456, 1467.

Without a showing to the contrary, State administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." (*United States v. Morgan* (1941), 313 U.S. 409, 421, 85 L. Ed. 1429, 1435, 61 S. Ct. 999, 1004; *Withrow v. Larkin* (1975), 421 U.S. 35, 55, 43 L. Ed. 2d 712, 728, 95 S. Ct. 1456, 1468.) The situation in this case is no different from that in the great majority of agency cases. The analysis of the Seventh Circuit Court of Appeals in *Martin-Trigona v. Underwood* (1975), 529 F.2d 33, 37, is apropos here:

"Further, as to appellant's due process attack upon the dual function of the Character and Fitness Committee, although we recognize that conferring investigative and adjudicative powers on the same individuals may create the possibility of an unconstitutional risk of bias, we also recognize that one who asserts this contention necessarily carries or assumes a difficult burden of persuasion. Initially, he must overcome a presumption of honesty and integrity in those serving as adjudicators; and second, he 'must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the

guarantee of due process is to be adequately implemented.' *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975). Similar claims to the one advanced by appellant in the instant case have been squarely rejected in prior decisions of the Supreme Court, *Federal Trade Comm'n v. Cement Institute,* 333 U.S. 683, 68 S. Ct. 793, 92 L. Ed. 1010 (1948); *Labor Board v. Donnelly Co.,* 330 U.S. 219, 236-237, 67 S. Ct. 756, 91 L. Ed. 854 (1947); *Richardson v. Perales,* 402 U.S. 389, 410, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), and we likewise, on the basis of *Withrow, supra,* reject appellant's argument in the instant case, absent any showing in the record or by appellant himself that the dual role played by the committee herein was either tainted by dishonesty or contained an unacceptable risk of bias against the appellant."

There is in the record before us no indication that the Department's actions have been or will be predicated on other than objective findings. In the absence of such proof, plaintiffs' contention cannot be sustained.

The judgment of the circuit court of St. Clair County is reversed and the cause remanded with directions to dismiss plaintiffs' complaint.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.