# Illinois Official Reports

## Appellate Court

*Stone Street Partners, LLC v. City of Chicago*, 2017 IL App (1st) 133159

| | |
|---|---|
| Appellate Court Caption | STONE STREET PARTNERS, LLC, a/k/a PMD, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. THE CITY OF CHICAGO, THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, PATRICIA JACKOWIAK, Director, Department of Administrative Hearings; THE CITY OF CHICAGO DEPARTMENT OF STREETS AND SANITATION; THOMAS G. BYRNE, Commissioner of the City of Chicago Department of Streets and Sanitation, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-3159 |
| Filed | December 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-10860; the Hon. LeRoy K. Martin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Linden & Bustamante (Richard F. Linden and Peter V. Bustamante, of counsel), and Katten & Temple LLC (Michael B. Katten and Joshua R. Diller, of counsel), both of Chicago, for appellant.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Jonathon D. Bryer, Assistant Corporation Counsel, of counsel), for appellees. |

Panel                    JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1      In an earlier case, Stone Street Partners, LLC (Stone Street), challenged certain practices of the City of Chicago Department of Administrative Hearings (Department). See *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2017 IL 117720. Stone Street won a partial victory, and the judgment against it was vacated. In this appeal, stemming from a different citation, which the City of Chicago (City) issued, Stone Street presents other challenges to the Department's practices. The circuit court rejected these challenges. We affirm.

¶ 2                             BACKGROUND

¶ 3      On January 17, 2012, the City of Chicago Department of Streets and Sanitation (DSS) issued an administrative notice of ordinance violation against an entity named PMD regarding property located at 34 East Oak Street in Chicago.[1] The notice stated: "[i]mproperly contained refuse exist [*sic*] at this location." It alleged that Stone Street violated section 7-28-261 of the Chicago Municipal Code, which provides:

> "(a) No person shall deposit refuse in a standard or commercial refuse container, or compactor, in a manner that prevents complete closure of the container's cover, or deposit refuse on top of a container in a manner that interferes with opening of the container, or pile or stack refuse against a container.
>
> (b) The owner, his agent or occupant of a property shall not allow any person to violate subsection (a) of this section. The presence of refuse preventing complete closure of the container's cover, deposited on or piled or stacked against a standard refuse container, a commercial refuse container, or compactor shall be prima facie evidence of violation of this subsection (b).
>
> (c) Any person who violates any provision of this section shall be fined not less than \$200.00 and not more than \$500.00 for each offense. Each day that a violation continues shall constitute a separate and distinct offense." Chicago Municipal Code § 7-28-261 (amended July 7, 1999).

¶ 4      On February 23, 2012, an attorney for Stone Street appeared before the Department to contest the notice. According to Stone Street's complaint, before the hearing began, Pamela Harris, the administrative law judge (ALJ) who heard Stone Street's case,

> "stated to everyone in the courtroom that no representative from the City was available to discuss or pre-try the cases. ALJ Harris stated that she had the authority to impose the minimum penalty permitted under the Municipal Code should anyone plead liable

---

[1]In its complaint, Stone Street alleges that it is also known as PMD and that it is the owner of the property at 34 East Oak Street. Thus, for simplicity, we refer to Stone Street as the respondent in the administrative proceeding below.

to the charges. ALJ Harris indicated in no uncertain terms that a trial tax would be imposed if anyone exercised their rights to a hearing and was found guilty. ALJ Harris made it clear to the entire courtroom that they would not receive the minimum fine if they proceeded to a hearing and were found guilty."

¶ 5    When Stone Street's hearing commenced, the ALJ tendered two photographs to Stone Street's attorney depicting a trash can bearing the letters "PMD" that was so filled with garbage that the lid could not close. The attorney objected to the introduction of these photographs on the basis that the City failed to produce them in response to a Freedom of Information Act request he had propounded on the City before the hearing. The ALJ admitted the photographs into evidence over this objection and found that the City had established a *prima facie* case of an ordinance violation.

¶ 6    In response, Stone Street's attorney objected to the entire proceeding on the basis that the City was engaging in the unauthorized practice of law because no attorney appeared for the City. The ALJ rejected this argument and found Stone Street liable. The ALJ then assessed a $300 fine, which was $100 more than the minimum, and a $40 fee and entered judgment against Stone Street for $340. Stone Street's complaint does not allege that its attorney specifically objected to the imposition of a fine greater than $200.

¶ 7    On March 26, 2012, Stone Street filed a four-count "Class Action & Administrative Review Complaint." The complaint alleged generally that the City "filed, appeared, and prosecuted" the case against Stone Street "without a licensed attorney in violation of Illinois law." It further alleged that, because the City "appeared and prosecuted the case without an attorney, the proceedings are null and void as a matter of law." According to Stone Street, "[t]he City's policy and practice of prosecuting these types of cases without a licensed attorney has affected, and continues to affect, thousands of individuals and entities."

¶ 8    In count I, Stone Street sought declaratory and injunctive relief "invalidating all fines, penalties, orders and judgments where the city appeared without a licensed attorney" on behalf of a class. Stone Street also sought a declaration that "the City of Chicago's practice of permitting an ALJ to act as both judge and prosecutor" violated its right to due process under the federal and Illinois constitutions.

¶ 9    In count II, Stone Street alleged that the ALJ who heard Stone Street's case stated that, while she was authorized to impose the minimum fine on anyone who entered a plea to liability, she would impose what Stone Street characterized as a "trial tax" by imposing more than the minimum fine on anyone who opted to proceed with a contested hearing. Stone Street requested a declaration that "the custom and practice of penalizing litigants for exercising their right to a contested hearing violates due process" and "[i]njunctive relief requiring that this practice cease and desist."

¶ 10    Count III was a claim under the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2012)). Count IV was a complaint for administrative review of the Department's decision.

¶ 11    On September 11, 2012, defendants filed a motion to dismiss counts I, II, and III pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). After a hearing, the court dismissed count II, finding that Stone Street failed to state a "cognizable claim for violation of due process." In reaching that conclusion, the court drew an analogy between the ALJ's statements and the plea bargaining process in a criminal case, stating:

"[I]t happens everyday *** that some judge somewhere in this County is saying to a defendant if you plead guilty I will give you probation. However, if you go to trial, Mr. Defendant, *** probation is off the table. That is perfectly acceptable and it happens everyday in this County. *** In this particular instance the ALJ indicated that if one accepts responsibility and admits to a violation, *** it was her habit to give the minimum fine. *** However, she says if there is a finding that you violated, then I'm not going to give you the minimum fine. And I don't think that to be a [violation] of one's due process right."

With respect to count I, the court stated, "I just don't see this as the unauthorized practice of law. I just think that we really don't have a justiciable declaratory action here." At the conclusion of the hearing, the court dismissed counts I and II with prejudice. The same day, Stone Street withdrew count III.

¶ 12   Count IV, Stone Street's claim for administrative review, remained pending. On August 14, 2013, the circuit court resolved that claim by denying Stone Street's petition for administrative review and affirming the ALJ's finding of liability as to the ordinance violation. This appeal followed.

¶ 13                                    ANALYSIS

¶ 14   Although defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code, the parties agree—and the record confirms—that the circuit court dismissed counts I and II for failure to state a cause of action pursuant to section 2-615 of the Code. See 735 ILCS 5/2-615, 2-619.1 (West 2012). A section 2-615 motion challenges the legal sufficiency of the complaint. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 5. "When reviewing whether a motion to dismiss under section 2-615 should have been granted, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Id.* "The critical inquiry is whether the allegations of the complaint, when considered in a light favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 27. We review a circuit court's dismissal of a complaint pursuant to section 2-615 *de novo*. *Id.*

¶ 15   We first consider whether the court properly dismissed count I, which sought a declaratory judgment that (1) the City engaged in the unauthorized practice of law by not having an attorney present to prosecute ordinance violations at hearings before the Department and (2) as a result, any and all fines that were imposed as a result of such hearings were null and void. In addition, Stone Street contends, as a corollary to this claim, that because no attorney appeared for the City at the hearing, the City essentially conscripted the ALJ into service as both judge and prosecutor, thereby violating Stone Street's right to due process. We consider each of these contentions in turn.

¶ 16   In Illinois, it is "unlawful for a corporation to practice law or appear as an attorney at law for any reason in any court *** or before any judicial body." 705 ILCS 220/1 (West 2012). This rule applies equally to private and municipal corporations. *Housing Authority of the County of Cook v. Tonsul*, 115 Ill. App. 3d 739, 742 (1983), *abrogated on other grounds*, *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040. " 'Practicing law' has been defined as 'Practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use

- 4 -

of any degree of legal knowledge or skill.' " *People ex rel. Illinois State Bar Ass'n v. Schafer*, 404 Ill. 45, 50-51 (1949).

¶ 17    As this definition implies, there can be no practice of law unless an actual person engages in an undertaking that requires legal knowledge or skill. See *id.* at 53-54 (holding that a real estate broker who prepared deeds, contracts, and mortgages relating to real estate transactions was engaged in the unauthorized practice of law); accord *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 36 (2005) ("[W]e hold that where the defendant lenders prepared the subject loan documents, *through their employees*, they did not engage in the unauthorized practice of law by charging a fee." (Emphasis added.)). This is all the more true in the case of corporations, because "[c]orporations can only act through their agents." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 737 (2009); see *Tonsul*, 115 Ill. App. 3d at 742 ("Municipal corporations, like their business counterparts, are soulless and inanimate, and *when an agent undertakes to practice law on behalf of such a principal*, he must be licensed to do so." (Emphasis added.)).

¶ 18    Based on the foregoing, as a matter of law, the City can only practice law through an agent, *i.e.*, a natural person. By logical extension, the only way the City could engage in the unauthorized practice of law is by causing one of its agents who is not admitted to practice law in this state to (1) give advice or (2) render services that (3) "require[ ] the use of any degree of legal knowledge or skill." *Schafer*, 404 Ill. at 50-51.

¶ 19    Count I alleges nothing of this sort. Rather than allege that the City caused a nonattorney agent to perform legal work, Stone Street instead accuses the City of doing the impossible: engaging in the practice of law during a hearing in which no one appeared on its behalf. See *Small v. Sussman*, 306 Ill. App. 3d 639, 645-46 (1999) (noting that it is a "legal impossibility" for a corporation to participate in a breach of fiduciary duty because "[c]orporations can only act through their agents"). Because Stone Street has not alleged that an actual person acting on behalf of the City engaged in the unauthorized practice of law, count I fails to state a valid claim.

¶ 20    As a corollary to this line of argument, Stone Street contends that the ALJ served as both judge and prosecutor. This, Stone Street contends, violated its due process rights. We initially reject the City's contention that Stone Street waived this argument by failing to raise it before the ALJ during the hearing. To be sure, it is true that, as a general matter, arguments or issues not raised in an administrative hearing "may not be raised for the first time before the circuit court on administrative review." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). However, as a matter of fundamental fairness, "[a]pplication of the waiver rule *** is less rigid" when the waived argument pertains to the conduct of the officer presiding over the proceeding. See *People v. Davis*, 185 Ill. 2d 317, 343 (1998) ("Because the basis for defendant's claim is the circuit judge's alleged refusal to consider certain mitigating evidence at defendant's death penalty hearing, which concerns the fundamental fairness of that proceeding, we review the claim for error.").

¶ 21    But this is as far as Stone Street's claim gets. In *Scott v. Department of Commerce & Community Affairs*, 84 Ill. 2d 42, 54 (1981), the Illinois Supreme Court rejected a claim virtually identical to Stone Street's. The *Scott* court characterized the argument as follows: "Plaintiffs' final argument is *** that they are entitled to a hearing before an impartial tribunal, and that due process requirements preclude the Department from serving as both prosecutor and judge. We do not agree." The court explained that, "[w]ithout a showing to the contrary,

State administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " *Id.* at 55 (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)). Relying extensively on *Martin-Trigona v. Underwood*, 529 F.2d 33 (7th Cir. 1975), the *Scott* court explained:

> " 'one who asserts this contention necessarily carries or assumes a difficult burden of persuasion. Initially, he must overcome a presumption of honesty and integrity in those serving as adjudicators; and second, he "must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." ' " *Scott*, 84 Ill. 2d at 55-56 (quoting *Martin-Trigona*, 529 F.2d at 37, quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

¶ 22    Stone Street argues that the ALJ violated its due process rights by "search[ing] for, find[ing], present[ing] and accept[ing] into evidence documentary evidence (in the form of photographs) into the record." But even taking those allegations as true, they do not allege that the ALJ was predisposed to rule against Stone Street. Moreover, Stone Street's complaint does not allege that "[t]he adjudicatory function" of the ALJ in this case was not "completely separate from the investigatory function" of the officer who issued the citation. *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 985 (1999); see *id.* at 984 ("Illinois case law, however, rejects the notion that the combination of investigatory, prosecutorial and judicial functions offends due process."). Based on the foregoing, we find that the circuit court correctly determined that count I failed to state a claim for a due process violation.

¶ 23    We next consider whether the circuit court correctly dismissed count II, which sought declaratory relief on the basis that the ALJ violated Stone Street's right to due process of law when she stated she would refrain from imposing the minimum fine on any party that did not plead liable to its citation. Stone Street maintains that by so doing, the ALJ essentially imposed a "trial tax" on it for exercising its right to a contested hearing. Relying on *North Carolina v. Pearce*, 395 U.S. 711 (1969), *Waicekauskas v. Burke*, 336 Ill. App. 3d 436 (2002), and *Northern Illinois Home Builders Ass'n v. County of Du Page*, 251 Ill. App. 3d 494 (1993) (*Northern I*), Stone Street contends that this conduct constitutes a due process violation because "[t]he imposition of a penalty for having pursued a right to appeal is a violation of due process of law." We disagree.

¶ 24    To begin, Stone Street's "trial tax" claim is not cognizable as a due process claim. In *Northern I*, the plaintiffs filed a complaint for *mandamus* seeking a declaration that an enabling act, which allowed Du Page County to enact impact fees, and ordinances passed pursuant to the enabling act were unconstitutional. *Northern I*, 251 Ill. App. 3d at 497. Of particular relevance here, one of the challenged ordinances stated, " 'in order to encourage the use of the above fee schedule, if an applicant chooses to pay any applicable fee in accordance with such schedule, the fee which would otherwise be due and owing shall be discounted by 15%. Developers who choose to conduct an Individual Assessment *** shall forfeit the 15% discount.' " *Id.* at 510 (quoting Du Page County Ordinance No. ODT-021C-89 § 11(2) (eff. July 25, 1990)).

¶ 25    The plaintiffs contended that this ordinance violated their right to due process. Citing *Pearce*, this court agreed. That decision was appealed to the Illinois Supreme Court, which affirmed in part and reversed in part. The Illinois Supreme Court agreed with this court's

finding that the ordinance was unconstitutional, but it explicitly disagreed that the ordinance violated due process rights. Instead, relying on *Lindsey v. Normet*, 405 U.S. 56 (1972), the court found that the ordinance's 15% discount provision violated equal protection, as well as the uniformity clause of the Illinois Constitution. See *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 47 (1995) (*Northern II*) ("It is clear that the forfeiture of the 15% discount burdens the right of a fee payer to appeal. However, we believe the constitutional deprivation involved is more properly categorized as a violation of the equal protection and uniformity clauses than of due process."). In light of *Northern II*, we find that Stone Street's constitutional claim is not legally cognizable as a violation of due process rights.

¶ 26    Stone Street's citation to *Waicekauskas* and *Pearce* does not compel us to reach a different result. In *Waicekauskas*, this court—just as it did in *Northern I*—relied on *Pearce* for the proposition that "[t]he imposition of a penalty for having pursued a right to appeal is a violation of due process of law." *Waicekauskas*, 336 Ill. App. 3d at 439. The court in *Waicekauskas*, however, did not cite or acknowledge the Illinois Supreme Court's decision in *Northern II*, 165 Ill. 2d at 47, which disagreed with the appellate court's *Pearce*-based due process holding. For this reason, we do not find *Waicekauskas* persuasive.

¶ 27    Moreover, *Waicekauskas* is distinguishable. In *Waicekauskas*, the plaintiff sued, among others, the Village of Midlothian, alleging that the village's motor vehicle parking ordinance was unconstitutional. The specific ordinance at issue contained a schedule of mandated fines that automatically escalated when a respondent timely requested a hearing. *Waicekauskas*, 336 Ill. App. 3d at 437-38 (citing Midlothian Municipal Code § 10-17-9 (1993)).

¶ 28    Stone Street has not cited a Chicago ordinance resembling the ordinance examined in *Waicekauskas*. Moreover, the ordinance at issue in *Waicekauskas* effectively deprived the hearing officer of any discretion whatsoever as to whether to levy a higher fine on defendants who opted for a hearing. By contrast, in the present case, Stone Street has not alleged the existence of a City ordinance that required administrative law judges to impose higher fines on those who exercised their right to a contested hearing. Similarly, Stone Street has not alleged that the ALJ somehow lacked authority to impose a minimum fine on those who opted for a contested hearing.

¶ 29    "Due process entails an orderly proceeding wherein a person is served with notice, and has an opportunity to be heard and to present his or her objections, at a meaningful time and in a meaningful manner, in a hearing appropriate to the nature of the case." *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 31; see *WISAM 1, Inc. v. Illinois Liquor Control Comm'n*, 2014 IL 116173, ¶ 26 ("[I]n administrative matters, due process is satisfied when the party concerned has the 'opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute.' " (quoting *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 702 (1994))). Stone Street has not alleged that the ALJ's conduct during the hearing was required by an ordinance mandating that all Department administrative law judges impose more than the minimum fine on parties who opt for a contested hearing. That failing is fatal to Stone Street's claim. Because Stone Street has not alleged that the ALJ lacked discretion, or was otherwise vindictive, it cannot seriously claim that it was denied its due process right to a *meaningful* hearing.

¶ 30    In *Pearce*, the Supreme Court held that (1) "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" and (2) the reasons for the increased sentenced "must be based upon objective

information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 U.S. at 726; see *Alabama v. Smith*, 490 U.S. 794, 798-99 (1989) ("In order to assure the absence of such a motivation [of vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear. [Citation.] Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information *** justifying the increased sentence." (Internal quotation marks omitted.)). The *Pearce* presumption applies in administrative proceedings. See *Waicekauskas*, 336 Ill. App. 3d at 439.

¶ 31    We nonetheless find *Pearce* inapplicable here because the ALJ's conduct in this case amounted to nothing more than constitutionally permissible plea bargaining. As the United States Supreme Court has explained, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, [citation], and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' [Citations.] But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

¶ 32    "The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but [the Supreme Court has] repeatedly held that the government 'may encourage a guilty plea by offering substantial benefits in return for the plea.' " *United States v. Mezzanatto*, 513 U.S. 196, 209-10 (1995) (quoting *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978)); see *United States v. Cruz*, 977 F.2d 732, 733 (2d Cir. 1992) ("Courts have long recognized that trial judges are entitled to encourage guilty pleas by imposing on a defendant who pleads guilty a lesser sentence than would have been imposed had the defendant stood trial." (citing *Corbitt*, 439 U.S. at 219)). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " *Bordenkircher*, 434 U.S. at 364 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). It is therefore not a violation of due process to impose a harsher punishment after a defendant declines to enter into a plea agreement. See *id.* at 365; *People v. Walker*, 84 Ill. 2d 512, 522 (1981) ("*Bordenkircher* teaches that defendants who make knowing, voluntary, and intelligent choices to risk an increased sanction rather than plead guilty pursuant to a plea bargain will be held to that choice."); see also *Smith*, 490 U.S. at 802 ("[W]e have upheld the prosecutorial practice of threatening a defendant with increased charges if he does not plead guilty, and following through on that threat if the defendant insists on his right to stand trial.").

¶ 33    Thus, in *People v. Lewis*, 88 Ill. 2d 129 (1981), the Illinois Supreme Court rejected the defendant's claim that the State violated his right to due process by seeking the death penalty after he rejected a plea bargain. The court explained:

    "There is no merit to the contention that the prosecutor's action in offering to recommend a 60-year sentence if defendant pleaded guilty, and seeking the death penalty when defendant elected to stand trial, penalized defendant for exercising his constitutional right to a jury trial. It is entirely clear that defendant knew death was a possibility when he chose to stand trial. There is here no indication of a purpose to

punish defendant for exercising his right to jury trial, \*\*\* nor allegations of prosecutorial vindictiveness \*\*\*. Unless we are willing to say that a prosecutor may never seek a penalty greater than that offered in plea discussions, defendant's argument here must fail, for his election to stand trial was made with a complete understanding of the hazards." *Id.* at 148-49.

¶ 34 Stone Street's complaint alleges that the ALJ stated that she had been authorized by the City to impose only the minimum fine in exchange for a plea to liability. The ALJ cautioned, however, that for parties that did not plead liable, the minimum fine was off the table and a more harsh punishment would be levied. Stone Street has not alleged that it was not "free to accept or reject the [ALJ's] offer." *Bordenkircher*, 434 U.S. at 363. Stone Street has also not alleged that the ALJ's statement was incomplete or ambiguous. As a result, Stone Street cannot contend that its decision to have a contested hearing was not "made with a complete understanding of the hazards." *Lewis*, 88 Ill. 2d at 148-49. Consequently, we find that the sum total of the allegations in Stone Street's complaint, and all reasonable inferences which can be drawn from those allegations, is that the ALJ conveyed the City's constitutionally permissible offer of plea bargaining. The ALJ's threat to impose higher fines on persons who requested hearings—a threat she made good upon by increasing Stone Street's fine by $100 over the minimum—was heavy-handed. But case law from higher courts compels us to find that her practice was constitutional, as against the specific challenges raised in Stone Street's complaint. Accordingly, the circuit court properly dismissed count II of Stone Street's complaint for failure to state a claim for a due process violation.

¶ 35 There are two final matters. First, in its appellate brief, Stone Street maintains that various sections of the Chicago Municipal Code are facially unconstitutional. Specifically, Stone Street maintains that (1) section 2-14-076(c) of the City's code (Chicago Municipal Code § 2-14-076(c) (amended Apr. 29, 1998)) is unconstitutional because, according to Stone Street, it authorizes ALJs to "perform prosecutorial functions while acting as judge" and (2) the hearing structure before the Department violates due process because the City's code does not provide a mechanism to allow litigants to request a substitution of judge. However, Stone Street's complaint did not allege that any specific section of the City's code was facially unconstitutional on these or any other bases. Accordingly, Stone Street forfeited these claims, and they cannot support reversal here. See *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 627 (1993) ("[A]s this matter is before us on review of the trial court's denial of a section 2-615 motion to dismiss, our consideration is limited to the facts alleged in the complaint.").

¶ 36 The other matter is count IV, Stone Street's claim for administrative review. It is unclear whether Stone Street is actually appealing the circuit court's order denying Stone Street's petition for administrative review. Working in Stone Street's favor is the fact that the notice of appeal it filed lists the circuit court's August 14, 2013, order as one of two orders from which it is appealing. Moreover, in the section of its brief containing the standard of review governing this appeal, Stone Street recites the standard of review applicable to administrative review claims. Yet, in the issues presented section of its brief, Stone Street does not list the propriety of the court's resolution of count IV against Stone Street as one of the issues presented for our review. Likewise, the argument section of Stone Street's brief is completely silent with respect to this issue. Stone Street's failure to raise the correctness of the circuit court's decision to deny

its petition for administrative review as an issue on appeal, and its corresponding failure to argue that issue in its appellate brief, results in forfeiture.

¶ 37 Forfeiture aside, we note that the arguments Stone Street raised before the circuit court on administrative review were largely duplicative of the legal issues it raised in counts I and II of its complaint. Accordingly, on the merits, Stone Street's petition for administrative review fails for the same reason counts I and II fail. Moreover, Stone Street did not argue in the court below, nor has it argued in this court, that the ALJ's finding of liability was against the manifest weight of the evidence. See *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992) ("[O]n administrative review, it is not a court's function to reweigh the evidence or make an independent determination of the facts. Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence."). As a result, this issue is forfeited.

¶ 38 The circuit court therefore correctly denied Stone Street's petition for administrative review.

¶ 39 CONCLUSION

¶ 40 We affirm the circuit court's order dismissing counts I and II of Stone Street's complaint with prejudice. We also affirm the court's order denying Stone Street's petition for administrative review.

¶ 41 Affirmed.