PAULINE BILLMAN, Indiv., *et al.*, Plaintiffs-Appellants, v. CROWN-TRYGG CORPORATION *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—88—2215

Opinion filed October 29, 1990.

Burditt, Bowles & Radzius, Chartered, of Chicago (William F. Haley and Jamie S. Freveletti, of counsel), for appellants.

Alfieri, Abbene, Durkin & Dailey, Ltd., of Chicago (Albert E. Durkin and Robert D. Shearer, Jr., of counsel), for appellee Crown-Trygg Corporation.

Heineke, Burke, Healy & Bodach, of Chicago (L. Barrett Bodach and Robert C. Farrar, of counsel), for appellee Virgil Cook & Sons, Inc.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, John H. Huston, and Christine L. Olson, of counsel), for appellee Albin Carlson & Co.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Pauline Billman, individually, Estel LeRoy Billman, individually, and Pauline Billman and Estel LeRoy Billman, as co-guardians of the estate and person of Thomas Austin McDonald, an incompetent, appeal the dismissal of counts VII and XV of their first amended complaint which alleged that defendants, Delta Construction, Inc., Gallagher Asphalt Corp., Frenzel Construction Co., Trygg Paving Co., Inc., Crown-Trygg Corp., Maintenance Coatings Co., Virgil Cook & Sons, Inc., Joliet Bridge & Construction Co., F.K. Ketler Co., Albin Carlson & Co., A.C. Pavement Striping Co., and Davis Concrete Construction Co., Inc., had been negligent in the reconstruction and modification of the intersection at Joliet Road and Route 53 in Romeoville, Illinois (the intersection). The trial court dismissed the counts on the ground that they were time barred by the statute of repose which governs actions brought against persons engaged in the design, planning, supervision, observation or management of construction or construction of an improvement to real property. (Ill. Rev. Stat. 1987, ch. 110, par. 13—214(b).) On appeal, plaintiffs contend that: (1) defendants' construction activities at the intersection did not constitute an "improvement to real property" as contemplated by section 13—214(b) of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1987, ch. 110, par. 13—214(b)); (2) section 13—214(b) is limited in its application to buildings and their appurte-

nances; (3) application of section 13—214(b) to the facts at bar abolished plaintiffs' remedy without affording them a reasonable time to bring suit; and (4) application of section 13—214(b) to include road design and construction violates the equal protection clause of the Illinois and the United States Constitutions. For the following reasons, the judgment of the trial court is affirmed.

The circumstances giving rise to this appeal are as follows. During the period from 1965 to 1968, defendants Crown-Trygg Corp. (Crown-Trygg), Virgil Cook & Sons, Inc. (Cook), Albin Carlson & Co. (Carlson), F.K. Ketler Co. (Ketler), and Joliet Bridge & Construction Co. (Joliet Bridge) performed certain construction work at the intersection. Subsequently, on August 22, 1984, plaintiff McDonald, while stopped in his automobile at a traffic signal in the northbound left-turn lane at the intersection, was struck by an automobile traveling southbound which had crossed over the median strip. The driver of the southbound car was allegedly intoxicated. McDonald suffered serious head injuries which rendered him comatose and resulted in his being adjudicated incompetent. On August 22, 1986, plaintiffs filed suit against defendants, alleging negligence. Thereafter, plaintiffs filed a first amended complaint, making changes not relevant to this appeal. In response, defendants Crown-Trygg, Cook, Carlson, Ketler and Joliet Bridge moved to dismiss counts VII and XV pursuant to section 2—619 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), on the ground that section 13—214(b) of the Code barred any action against defendants. The trial court granted the motion, but did not state in the order that the decision was final and appealable. As a result, plaintiffs were allowed additional time within which to file a motion for reconsideration. During this time, plaintiffs reached a settlement with Ketler and Joliet Bridge and those parties were dismissed from the action. Following a hearing on plaintiffs' motion for reconsideration, the trial court entered a final and appealable order denying the motion. Plaintiffs' timely appeal followed.

■ Initially, plaintiffs contend that defendants' construction activities at the intersection did not constitute an "improvement to real property" as contemplated by section 13—214(b) of the Code, which provides, in pertinent part:

> "No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission. However, any person who discovers such act or

omission prior to expiration of 10 years from the time of such act or omission shall in no event have less than 4 years to bring an action as provided in subsection (a) of this Section." Ill. Rev. Stat. 1987, ch. 110, par. 13—214(b).

In reliance on *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 483 N.E.2d 613, plaintiffs argue that the work performed by defendants on the intersection was mere repair and replacement and not an improvement to real property. In *Calumet*, plaintiff engaged defendant to design, install and sell a piping connection between the municipal water supply pipe and the water supply pipe of plaintiff's main clubhouse. The piping connection was installed during the period of October 30, 1980, through November 3, 1980. On June 21, 1981, the piping connection allegedly became separated and thousands of gallons of water flooded the basement and part of the first floor of plaintiff's clubhouse.

On September 29, 1983, plaintiff filed a complaint alleging that defendant had been negligent. In response, defendant moved to dismiss the complaint based on the two-year limitations period of section 13—214(a). Plaintiff then filed an amended complaint, after which the trial court dismissed the action with prejudice as being time barred by section 13—214(a).

On appeal, plaintiff argued that the five-year limitations period of section 13—205 applied rather than the two-year limitations period of section 13—214(a). As does section 13—214(b), at issue in the present case, section 13—214(a) applies to:

> "Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property ***."

(Ill. Rev. Stat. 1987, ch. 110, par. 13—214(a).)

At issue in *Calumet* was whether the piping connection was an "improvement to real property" as contemplated in section 13—214(a).

■■ ■ Looking to the actual language of section 13—214(a) and the commonly accepted meaning of that language, the *Calumet* court found that "improvement" means "an addition to real property amounting to more than a mere repair or replacement, and which substantially enhances the value of the property *** [including] substantial additions or changes." (*Calumet*, 136 Ill. App. 3d at 613.) The court noted that while construction of a water main had been found to be an improvement, there was no case law characterizing a piping connection as an improvement. Having arrived at a definition for the phrase "improvement to real property," the court reviewed the record

and determined that, although the piping connection may have enhanced the value of the property, there was an insufficient basis in the record to determine whether the piping connection was a substantial new addition or a repair or replacement. Accordingly, the court reversed the dismissal of count I and remanded the cause for further proceedings, noting that "[i]f, on remand, the piping connection is properly established to be an improvement, dismissal would be proper at that time." (136 Ill. App. 3d at 613.) Relying on the *Calumet* court's definition of "improvement," plaintiffs in the present case contend that the work performed by defendants was only a replacement and did not enhance the value of the property.

In our view, *Calumet* does not support the plaintiffs' position. In the present case, unlike in *Calumet*, the pleadings contained sufficient information as to the type of work done at the intersection. Specifically, the uncontradicted affidavit of Howard E. Reeves, president of defendant Crown-Trygg, general contractor for the work done at the intersection, stated that the following work was completed at the relevant intersection and highways:

"(a) Existing highway was widened and resurfaced.
(b) Concrete medians were installed.
(c) Curbing and gutters were installed.
(d) Storm sewers were installed."

Moreover, in light of the type of construction work performed by defendants, plaintiffs' contention that the work constituted a mere repair or replacement is not supported by either recent case law (*Cross v. Ainsworth Seed Co.* (1990), 199 Ill. App. 3d 910, 557 N.E.2d 906; *American National Bank & Trust Co. v. Booth/Hansen Associates, Ltd.* (1989), 186 Ill. App. 3d 865, 542 N.E.2d 925; *Continental Insurance Co. v. Walsh Construction Co.* (1988), 171 Ill. App. 3d 135, 524 N.E.2d 1131) or by statutory law (Ill. Rev. Stat. 1987, ch. 24, par. 9—3—2).

Most recently, in *Cross v. Ainsworth Seed Co.* (1990), 199 Ill. App. 3d 910, 557 N.E.2d 906, the court expanded the *Calumet* definition of "improvement" by stating that an "improvement" was a " 'valuable addition made to property *** or an amelioration in its condition, *** costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.' " (199 Ill. App. 3d at 921, quoting *Hilliard v. Lummus Co.* (7th Cir. 1987), 834 F.2d 1352, 1354 n.3.) Therefore, pursuant to *Cross*, an improvement need not only enhance the "value" of property, it may enhance the beauty or utility of that property or adapt it to different or further purposes.

Agreeing that an improvement involved more than a mere repair

or replacement, the court in *American National Bank & Trust Co. v. Booth/Hansen Associates, Ltd.* (1989), 186 Ill. App. 3d 865, 542 N.E.2d 925, held that an excavation of property prior to construction constituted an "improvement," and affirmed the trial court's dismissal of the cause of action for untimely filing pursuant to section 13—214.

Similarly, in *Continental Insurance Co. v. Walsh Construction Co.* (1988), 171 Ill. App. 3d 135, 524 N.E.2d 1131, the court adopted *Calumet*'s definition of "improvement to real property" and held that the engineering and construction of an underground sewer system (the Deep Tunnel project) constituted an "improvement to real property," as contemplated by section 13—214. In reaching its decision, the court noted that the Deep Tunnel project was "a sophisticated underground tunnel system for flood control and sewer distribution purposes" and that the record did not support a contention that the project was a mere repair or replacement of parts of the existing sewer system. 171 Ill. App. 3d at 140.

In addition, section 9—3—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 9—3—2) also supports the conclusion that the work performed by defendants at the intersection constituted an "improvement." Section 9—3—2, which applies to all incorporated municipalities (Ill. Rev. Stat. 1987, ch. 24, par. 1—1—4), defines "local improvements" as including "the improving, widening or extending of any street, avenue, lane, alley or other public place by grading, paving, repaving, resurfacing, and constructing curbs, gutters, storm sewers, sanitary sewers, water mains, walks, gas mains, street lights and all necessary appurtenances thereto and otherwise improving the same, or repairing of curbs, gutters, storm sewers, sanitary sewers, water mains, walks, gas mains, street lights and all necessary appurtenances thereto and otherwise improving the same." Ill. Rev. Stat. 1987, ch. 24, par. 9—3—2.

Applying the aforementioned case law and statutory law to the facts in the present case, we conclude that defendants' construction work on the intersection constituted an improvement to real property as contemplated by section 13—214(b). The construction work enhanced the utility of the property (*Cross v. Ainsworth Seed Co.* (1990), 199 Ill. App. 3d 910, 557 N.E.2d 906), constituted substantial additional changes to the real property (*Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 483 N.E.2d 613), and included widening and improving a street by grading, paving, resurfacing and constructing curbs, gutters and storm sewers (Ill. Rev. Stat. 1987, ch. 24, par. 9—3—2).

With respect to plaintiffs' contention that defendants Carlson and Cook, subcontractors, did not allege the specific work performed by them, Carlson and Cook performed the work contracted for by Crown-Trygg, as general contractor, which was delineated in the affidavit of Howard E. Reeves. The conclusion that the construction of the intersection, as detailed in the Reeves affidavit, constituted an improvement, by necessity, includes the work performed by the subcontractors.

Next, plaintiffs contend that section 13—214(b) is limited in its application to the construction of buildings and their appurtenances. In raising this issue, plaintiffs argue that the meaning of section 13—214(b) is not clear on its face. Therefore, this court must determine the legislature's intent by reviewing the relevant legislative history which, plaintiffs argue, indicates that the term "real property" was limited to buildings and their appurtenances, and does not encompass highway intersections.

■■ ■ The rules of statutory construction provide that in determining the intent of the legislature, courts must first look to the plain language of the statute and interpret the language according to its plain meaning. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076.) In that regard, "real property" is generally understood to be: "Land, and generally whatever is erected or growing upon or affixed to land." (Blacks Law Dictionary 1096 (5th ed. 1979).) By its own terms, this definition would include the construction of highways, intersections, gutters, sewers and curbs. Moreover, recent case law supports the conclusion that "improvements to real property" is not an ambiguous term, and, thus, does not necessitate review of legislative history. *Cross v. Ainsworth Seed Co.* (1990), 199 Ill. App. 3d 910, 557 N.E.2d 906; *American National Bank & Trust Co. v. Booth/Hansen Associates, Ltd.* (1989), 186 Ill. App. 3d 865, 542 N.E.2d 925; *Continental Insurance Co. v. Walsh Construction Co.* (1988), 171 Ill. App. 3d 135, 524 N.E.2d 1131; *Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 483 N.E.2d 613.

■■ However, even if this court looked to the legislative history to determine the meaning of "real property" as it is used in section 13—214, the meaning would not be limited to buildings and their appurtenances. As indicated by defendant Crown-Trygg in its brief, during legislative debates on House Bill 1031, predecessor to section 13—214, in answer to a question as to whether the bill would apply to "such things as bridges," Representative Dunn, sponsor of the bill, answered, "This legislation will apply to any improvement to

real property."

Plaintiffs emphasize the fact that during the debates, the word "building" was used extensively. It is clear from Representative Dunn's clarification that the word "building" was used only as an example of real property and was not meant to be a limiting term. Further, if this court substituted the word "building" for "real property" in section 13—214(b), it would be improperly usurping the role of the legislature by reading into the statute words which were not the plain intention of the legislature. *Commonwealth Edison Co. v. Walsh Construction Co.* (1988), 177 Ill. App. 3d 373, 532 N.E.2d 346.

Moreover, in our view, the fact that Illinois courts have consistently applied section 13—214 to the construction of buildings does not limit the meaning of "real property" to buildings. None of the cases hold, as plaintiffs would have this court believe, that section 13—214 applies only to buildings. Rather, the construction at issue in the cases happened to concern buildings or their appurtenances, and the cases simply referenced this fact in their analysis.

Next, plaintiffs contend that application of section 13—214(b) to the facts at bar abolishes plaintiffs' remedy without affording them a reasonable time to bring suit. As a premise for this argument, plaintiffs assert that, pursuant to *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, 447 N.E.2d 408, and *Costello v. Unarco Industries, Inc.* (1986), 111 Ill. 2d 476, 490 N.E.2d 675, plaintiff McDonald had an existing, inchoate right of action at the time of the effective date of the 1981 amendment to section 13—214 which could not be instantaneously barred by the amendment even though the complaint was not filed until after the effective date of the amendment. Contrary to plaintiffs' position, *Moore* and *Costello* defeat, rather than support, the premise for their argument.

■ In both *Moore* and *Costello*, the supreme court addressed retroactive application of a statute of repose to a plaintiff's inchoate right. The *Moore* court defined an inchoate right as one which arises when a person is injured, whether or not that person is aware that he has been injured at that time. (*Moore*, 95 Ill. 2d at 232.) For example, in *Moore*, an appeal which consolidated the cases of plaintiffs Moore, Isaacs and Fenchel, each appeal involved the validity of the 1976 amendment to section 21.1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 22.1). The relevant facts are as follows. *Moore*: surgery was performed on May 24, 1972. On March 17, 1978, Moore discovered that a needle had been negligently left in her body during surgery and filed her negligence complaint on October 4, 1978. *Isaacs*: X-ray treatments were given to him in 1940. In May

1977, Isaacs discovered that, as a result of these treatments, he had developed growths on his thyroid gland. Isaacs filed his complaint on May 16, 1978. *Fenchel*: X-ray treatments were given to Fenchel from 1941 to 1943. On January 31, 1978, Fenchel discovered that, as a result of the treatments, tumors had developed on her thyroid gland. Fenchel filed her complaint on January 29, 1980. With respect to each of these plaintiffs, the inchoate right to a cause of action arose at the time of the injury, *i.e.*, when surgery was performed in 1972 and X-ray treatments were given in the 1940's. Thus, the individual rights arose prior to the effective date of the 1976 amendment.

The *Moore* court determined that because the occurrences giving rise to the injuries had occurred prior to the effective date of the 1976 amendment to the Limitations Act, each plaintiff had an inchoate right which could not be denied by retroactive application of the amended statute. Once the *Moore* court determined that an inchoate right existed, the next question it addressed was whether each plaintiff had filed his or her cause of action within a reasonable time after having discovered the injury. If the plaintiffs had not had an inchoate right, the question of reasonableness would never have been reached.

Similarly, in *Costello v. Unarco Industries, Inc.* (1986), 111 Ill. 2d 476, 490 N.E.2d 675, plaintiff was exposed to asbestos from fall 1942 to spring 1945. He discovered that he had been injured due to the exposure in September 1980 and filed a lawsuit on October 23, 1981. The relevant statute of repose had been amended in 1979, adding a savings clause which stated that the statute would apply to any cause of action accruing on or after January 1, 1979, involving any product which was in or entered the stream of commerce prior to, on, or after January 1, 1979. The supreme court found that plaintiff had an inchoate right to a cause of action prior to the effective date of the January 1, 1979, amendment, that the cause of action accrued subsequent to the amendment, and that the action had been reasonably commenced within three years of the effective date of the amendment and within two years of discovery. Accordingly, the court held that the complaint had been timely filed.

In the present case, plaintiffs contend that because the construction of the intersection was completed prior to the 1981 amendment to section 13—214, McDonald had an inchoate right of action as of the date of completion which could not be instantaneously barred by the amendment. However, pursuant to *Moore* and *Costello*, plaintiffs did not have an inchoate right of action in 1968 because McDonald had not been injured until nearly three years after the effective date of the 1981 amendment.

In our view, *Erdie v. Central Illinois Public Service Co.* (1988), 175 Ill. App. 3d 1050, 530 N.E.2d 514, is dispositive of the issue. In *Erdie*, plaintiff was injured on March 15, 1985, when the metal grating upon which he was walking collapsed and he fell approximately 30 feet to the ground. The incident occurred at the Central Illinois Public Service Company power plant (CIPS). Plaintiff originally filed his complaint against CIPS. When he subsequently learned that Western Architectural Iron Co. had sold the metal grating to CIPS and had installed the grating, he amended his complaint to include Western. Western then moved for summary judgment on the ground that the counts against it were barred by section 13—214(b), amended effective January 1, 1980, to limit its applicability to any cause accruing after January 1, 1979. In an affidavit attached to the motion, Western stated that it had last sold the ironwork and grating to CIPS on October 19, 1972, and that it had performed no work on the grating subsequent to that date. The trial court granted summary judgment in favor of Western.

On appeal, the reviewing court held that because plaintiff's injury had occurred subsequent to the January 1, 1980, amendment, he had no inchoate or vested right in a cause of action prior to the amendment. In response to plaintiff's argument that his rights were inchoate prior to January 1, 1980, because the metal grating, which had caused the injury, had been installed in 1972, the *Erdie* court stated, "This analysis flies in the face of the clear language of [the statute]." (175 Ill. App. 3d at 1053.) Similarly, in the present case, plaintiffs' argument that McDonald had an inchoate right prior to 1981 because the intersection had been completed in 1968 "flies in the face" of the language of section 13—214(b).

■■ ■ Finally, plaintiffs argue that application of section 13—214(b) to include road design and construction violates the equal protection clause of the Illinois and United States Constitutions. It is well established that for a statute which classifies individuals to be constitutional under the equal protection laws, the statute must have a reasonable basis for differentiating between class members and nonclass members, and the classification must bear a reasonable relationship to the purpose of the act. (*Calumet Country Club v. Roberts Environmental Control Corp.* (1985), 136 Ill. App. 3d 610, 483 N.E.2d 613.) A statute is presumed to be valid, and the burden is on the party challenging it to establish its constitutional invalidity. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.) As a general rule, courts will not interfere with the legislature's judgment unless classification is clearly unrea-

sonable and palpably arbitrary, and will resolve all reasonable doubts in favor of upholding the validity of the statute. *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 500 N.E.2d 34.

Without citation to legal authority, plaintiffs contend that the purpose of section 13—214(b) is to prevent the difficulty and increased cost of defending stale claims. Plaintiffs argue that while application of section 13—214(b) to building construction is reasonably related to that purpose, application to highway construction is not. As a basis for their distinction of the two types of construction, plaintiffs assert that building construction is fraught with latent defects, the defense of which requires "the defendant *** [t]o go to the trouble and expense of locating witnesses and documents, or in their absence, disassemble building structures to obtain the same information." By contrast, plaintiffs assert that road construction cases involve only "open, obvious and patent defects, having absolutely nothing to do with construction techniques, adequacy of materials and other subtle problems."

 In our view, plaintiffs' argument is unpersuasive on the grounds that it is void of legal authority and predicated on mere speculation as to the nature of road construction defects. Unsupported speculative theories such as that argued by plaintiffs are insufficient to overcome the presumption of the statute's validity and to render a statute unconstitutional. See *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.