Sarah HERRIOTT, individually and as Special Administratrix of the Estate of Brutus Herriott, Deceased, Plaintiff,

v.

ALLIED–SIGNAL, INC., a foreign corporation, Engineering Materials, a foreign corporation, Allied Chemical Corporation, a foreign corporation, and Wilputte Coke Oven Division, Allied Chemical & Dye Corporation, a foreign corporation, Defendants.

No. 91 C 1377.

United States District Court, N.D. Illinois, E.D.

July 22, 1992.

Steven Robert Penn, Driscoll & Driscoll, Schaumburg, Ill., Randall F. Peters, Randall F. Peters & Associates, Chicago, Ill., for plaintiff.

John William Bell, Robert J. Comfort, Johnson & Bell, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Jurisdiction is based on diversity. 28 U.S.C. § 1332. For the reasons set forth below, we grant defendants' motion for summary judgment.

## BACKGROUND

On January 31, 1991, plaintiff, Sarah Herriott ("Herriott"), brought a six count complaint individually and as Special Administratrix of the estate of Brutus Herriott. This suit arises out of the death of her husband, Brutus Herriott, while he was working "around and upon" a piece of equipment known as a "Larry–Car." Defendants include Allied–Signal, Inc., Engineering Materials, Allied Chemical Corporation, and the Wilputte Coke Oven division of Allied Chemical & Dye Corporation (collectively "Allied").

The facts of this case are not complicated.[1] Between 1953 and 1957, Interlake Steel (now ACME Steel) hired Allied to design, manufacture, and construct two batteries of coke ovens at Interlake Steel's facilities. Each battery is a row of fifty adjacent coke ovens. One row is directly behind the other. Also as part of this construction, Interlake purchased from Allied two pieces of ancillary equipment called coal-charging cars, also known as Larry–Cars.

A Larry–Car is a machine that receives coal from the plant's charging bins and carries it to a particular coke oven which is to be "charged." Allied assembled and constructed the Larry–Car on top of the batteries during the initial building of the batteries in the 1950's. The Larry–Car travels in a north and south direction along 490 feet of rail over the batteries. As such, the Larry–Car is assembled approximately twenty-five to thirty feet above the ground. Moreover, the machine weighs thirty tons and is twelve feet high, twenty feet long, and thirty-five feet wide. After obtaining coal from the charging bins, the Larry–Car travels on rails on top of the coke oven batteries. When over the designated oven to be charged, the Larry–Car operator drops the coal into the oven, and the coal is then cooked and processed. According to the unrebutted deposition testimony of Mr. Dick O'Hearn ("O'Hearn"), an assistant division manager at ACME Steel's coke plant, the Larry–Car is the only way to charge an oven with coal and therefore the only way at the plant to process coke.

Brutus Herriott was employed by ACME as a Larry–Car operator. On February 1, 1989, Mr. Herriott was killed while working around and upon the Larry–Car. Subsequently, on January 31, 1991, Sarah Herriott filed a six count complaint which was removed to this Court. Herriott contends that Allied's errors in its design and manufacturing of the Larry–Car rendered it unreasonably dangerous and defective and that this condition proximately caused Mr. Herriott's death.

In response to Herriott's complaint, Allied has filed this motion for summary judgment. Allied's sole argument is that the ten year statute of repose set forth in Illinois Revised Statute Ch. 110, section 13–214(b) bars Herriott's action. Herriott disagrees. We discuss both parties' arguments below. But first, we address the appropriate summary judgment standard.

---

1. We note that neither party here is in compliance with this Court's local rules. *See* N.D.Ill. Local Rule 12(m) & 12(n). Nevertheless, we will address the merits of the motion.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits, and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue exists if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A "material fact" exists only if there is a factual dispute that is outcome determinative under governing law. *Id.* at 248, 106 S.Ct. at 2510. The party seeking summary judgment has the initial burden of showing that no such issue of material fact exists.

When a properly supported motion for summary judgment has been made, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial." *Id.* Like the movant, the non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather contentions must be supported by proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, the opposing party is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts but not every conceivable inference. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). It is light of this standard that we address Allied's motion.

## DISCUSSION

■ The sole issue we must address is whether section 13–214(b) of the Illinois Code of Civil Procedure applies to this dispute. If it does, summary judgment is proper. Because we conclude that Allied's design, manufacture, and construction of Inland Steel's Larry–Car constituted an "improvement to real property" within the

meaning of section 13–214(b), we grant Allied's motion for summary judgment.

Section 13–214(b) is the statute of repose applicable to lawsuits brought against persons who have designed, planned, supervised, observed, or managed the construction of an improvement to real property.[2] Specifically, it reads:

> [n]o action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

Ill.Ann.Stat. ch. 110, para. 13–214(b) (Smith–Hurd Supp.1991). The sole dispute here is whether the design, manufacture, and construction by Allied of Acme's Larry–Car in the mid 1950's constitutes an "improvement to real property" within the meaning of section 13–214(b). This is a question of law. *Hilliard v. Lummus Co., Inc.*, 834 F.2d 1352, 1354 (7th Cir.1987).

Unfortunately, the Illinois Supreme Court has yet to interpret the phrase "improvement to real property" as defined in section 13–214(b). As such, our task, as a federal court sitting in diversity, is to predict how the Illinois Supreme Court would resolve this issue. *Parr v. Triplett Corp.*, 727 F.Supp. 1163, 1166 (N.D.Ill.1989). In so doing, we note that Illinois Appellate Court decisions are not controlling *per se*. *Williams v. Lane*, 826 F.2d 654, 661–62 (7th Cir.1987); *Green v. J.C. Penney Auto Insur. Co.*, 806 F.2d 759, 761 (7th Cir.1986). However, these decisions must be followed if they represent a sound prediction of how the Illinois Supreme Court would decide the issue. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *McCoy v. Richards*, 771 F.2d 1108, 1110 (7th Cir. 1985). Additionally, the Seventh Circuit's prediction of how the Illinois Supreme Court would decide this issue is binding on

---

**2.** A statute of repose differs from a statute of limitations. A statute of limitations governs the time period within which lawsuits may be commenced after a cause of action has accrued. In contrast, a statue of repose extinguishes an action before it arises.

this Court unless the state supreme court has issued a contrary decision or it appears from subsequent Illinois appellate court decisions that the Seventh Circuit's prediction was incorrect. *Largoza v. General Elec. Co.*, 538 F.Supp. 1164, 1166 (E.D.Pa.1982) (citations omitted).

The Seventh Circuit has indeed addressed the issue of the meaning of "improvement to real property" in *Hilliard v. Lummus Co.*, 834 F.2d 1352 (7th Cir.1987). In *Hilliard*, the Seventh Circuit held that the "Illinois Supreme Court might very well adopt" the definition of "improvement to real property" as expressed in *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill.App.3d. 610, 91 Ill. Dec. 267, 483 N.E.2d 613 (1st Dist.1985). *Hilliard*, 834 F.2d at 1355. *In Calumet Country Club*, the Illinois Appellate Court followed the majority view and applied a "commonsense" approach that focused on the ordinary meaning of the statutory language in question. *Id.* at 1354–55. In so doing, the court defined "improvement" as:

an addition to real property amounting to more than a mere repair or replacement, and which substantially enhances the value of the property.... Improvements include buildings and substantial additions or changes to existing buildings.

*Calumet Country Club*, 91 Ill.Dec. at 270, 483 N.E.2d at 616; *see also Hilliard*, 834 F.2d at 1355. In applying this definition, courts must not focus on the single component part that allegedly caused the plaintiff's injury. Rather, courts must "concentrate on the entire system" that the defendant designed, planned, supervised, managed, or constructed. *Hilliard*, 834 F.2d at 1356; *St. Louis v. Rockwell Graphic Systems*, 220 Ill.App.3d 704, 163 Ill.Dec. 142, 145, 581 N.E.2d 93, 96 (1st Dist.1991); *Cross v. Ainsworth Seed Co.*, 199 Ill. App.3d 910, 145 Ill.Dec. 927, 934, 557 N.E.2d 906, 913 (4th Dist.1990).

The Seventh Circuit applied these rules in *Hilliard*. There, the plaintiff, Hilliard, worked in a cocoa-processing plant. In 1965, the owner of the processing plant hired the defendant, Lummus, to provide its engineering and technical services to modernize the processing plant. Among other recommendations, Lummus suggested that certain screw conveyors, which carried ground cocoa from a sterilizer to a pulverizing mill, be equipped with stainless steel components instead of their carbon steel components. *Hilliard*, 834 F.2d at 1353. In 1981, Hilliard's right arm was severed above the elbow after he opened the cover of a screw conveyor. *Id.* at 1353. Hilliard subsequently brought suit against Lummus for his injuries.

The Seventh Circuit affirmed the district court's entry of summary judgment for Lummus based on section 13–214(b). The Seventh Circuit specifically held that the screw conveyor constituted an improvement of real property within the meaning of section 13–214(b). *Id.* at 1354. In so holding, the court adopted the district court's reasoning, which provided as follows:

[t]hat the conveyor is more than a mere repair or replacement is beyond dispute. The uncontested deposition testimony established that the conveyor was installed in about 1950 along with the construction of the building and has remained there ever since. The conveyor was not a repair to or a replacement of anything that previously existed. Furthermore, we do not think that it can seriously be doubted that the conveyor substantially enhanced the value of the property. The plant is designed to produce processed cocoa, and the conveyor was built as an integral component of that process.

*Id.* at 1355–56.

The Seventh Circuit further reasoned that Hilliard's focus on Lummus' work on the screw conveyor alone was error. Instead, the court stressed that the totality of Lummus' work must be considered in determining whether the conveyor constituted an improvement to real property. Indeed, the court noted that " 'if a component is an essential or integral part of the improvement to which it belongs, then it is itself an improvement to real property.' " *Id.* at 1356 (citation omitted). Applying this rule, the court found that Lummus' work was not limited to suggesting im-

provements to the screw conveyor, but rather involved "a broad spectrum of improvements to the plant's cocoa-processing system." *Id.* Because all of these improvements, taken as a whole, constituted an improvement to real property and because the screw conveyor was an "integral part" of the processing system, the screw conveyor itself constituted an improvement to real property within the meaning of section 13–214(b). *Id.* Therefore, the court concluded that the Illinois statute of repose barred Hilliard's negligence action.

A federal district court in *Adair v. Koppers Co., Inc.*, 541 F.Supp. 1120 (N.D.Ohio 1982), *aff'd*, 741 F.2d 111 (6th Cir.1984), reached a similar result.[3] In *Adair*, the defendant, Koppers, had been hired in 1923 to construct an industrial complex styled by-product coke plant. *Adair*, 541 F.Supp. at 1122. In constructing the processing plant, Koppers designed and installed a conveyor that transported coal from a rail system to certain by-product coke ovens. *Id.* at 1122–23. The plaintiff, Adair, was injured while working around the conveyor and sued Koppers for his injuries.

The court granted Kopper's motion for summary judgment, holding that the conveyor constituted an improvement to real property. *Id.* at 1130. In so holding, the court reasoned that the conveyor was "an integral component of an industrial system which is essential for the plant to serve the purpose for which it was designed: transportation of coal is essential to the operation of the By–Product Coke Plant." *Id.* at 1125. Therefore, the court concluded that Ohio's statute of repose barred Adair's action.

Courts in other jurisdictions have reached similar results. *See Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448 (Minn.1988) (overhead crane which was connected to rail transport system in crushing area of mine constituted improvement to real property); *McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334 (D.Colo. 1980) (surge tank in oil refinery an "im-

provement"); *Pacific Indemnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977) (furnace installed in a store an "improvement to real property").

We also note that Illinois Appellate Court decisions after *Hilliard* have not retreated from the definition of "improvement to real property" as articulated in *Calumet Country Club.* Rather, these courts have expanded the definition. These courts have defined "improvement" as:

> a valuable addition made to property ... or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.

*Cross*, 145 Ill.Dec. at 934; 557 N.E.2d at 913; *see also St. Louis*, 163 Ill.Dec. at 145, 581 N.E.2d at 96; *Billman v. Crown–Trygg Corp.*, 205 Ill.App.3d 916, 150 Ill. Dec. 776, 779, 563 N.E.2d 903, 906 (1st Dist.1990). Thus, under this expanded definition, an improvement is not limited to that which "substantially enhances" the value of property. Rather, an improvement may also enhance the beauty or utility of that property or adapt the property to different or further purposes. *St. Louis*, 163 Ill.Dec. at 145; 581 N.E.2d at 96.

The Illinois Appellate Court in *St. Louis v. Rockwell Graphic Systems, Inc.*, 220 Ill.App.3d 704, 163 Ill.Dec. 142, 581 N.E.2d 93 (1st Dist.1991), *cert. granted*, 143 Ill.2d 648, 167 Ill.Dec. 410, 587 N.E.2d 1025 (1992), applied these broader principles. There, the plaintiff, St. Louis, had his arm crushed in a newspaper's printing press. Subsequently, St. Louis sued defendant Rockwell which had twelve years earlier designed, sold, and assisted in installing the press as part of the newspaper's plant expansion. *Id.*, 163 Ill.Dec. at 143–44, 581 N.E.2d at 94–95.

The court held that the press was an improvement of property within the meaning of section 13–214(b). *Id.*, 163 Ill.Dec. at

---

**3.** Although the court applied Ohio law, Ohio's statute of repose was virtually identical to sec-

tion 13–214(b). *Adair*, 541 F.Supp. at 1121–22.

45, 581 N.E.2d at 96. The court reasoned that the press "was a valuable addition" to the newspaper printing plant and that the newspaper's expansion project required "an expenditure of labor and capital, and amounted to more than a mere repair or replacement." *Id.* The court further reasoned that the additional press was intended "to enhance the value and utility of the newspaper's property, and also to adapt the property for further purposes, i.e., to print more newspapers." *Id.* Therefore, the printing press constituted an improvement to property within the meaning of section 13–214(b), and St. Louis' counts were barred.

Applying these principles to this case, it is clear that Allied's Larry–Car is an improvement to real property within the meaning of section 13–214(b). Like the coal conveyor system in *Adair*, the Larry–Car was constructed in the mid 1950's as part and parcel of the construction of Inland Steel's coke processing plant. Thus, it in no way can be characterized as a mere repair or replacement. Moreover, O'Hearn's unrebutted testimony makes equally clear that the only way to charge the ovens with coal, and therefore the only way to process coke at the plant, is through the use of the Larry–Car. Thus, the Larry–Car, like the conveyor systems in *Hilliard* and *Adair*, is an integral part of the industrial processing system for which the property is used. Accordingly, the Larry–Car substantially enhances the value of the property in question. Indeed, without it, the plant would be unable to fulfill its primary purpose. Similarly, like the newspaper press in *St. Louis*, the Larry–Car required a substantial expenditure of labor and capital which enhanced the utility and value of Inland Steel's real estate; Allied's work also adapted the real property in question for a further purpose. As such, Allied's efforts in designing, manufacturing, and constructing the Larry–Car constitutes an improvement to property within the meaning of section 13–214(b). Therefore, Herriott's action is barred by the statute, and we must grant Allied's motion for summary judgment.

Herriott's primary argument against the application of section 13–214(b) is that Allied's Larry–Car constitutes a "product," not an improvement to real property, and is therefore subject to the products liability statute of repose articulated in section 13–213(b). Importantly, this statute of repose only bars products liability actions based on the doctrine of strict liability. Ill.Ann.Stat. ch. 110, para. 13–213(b). Therefore, no statute of repose exists to bar products liability actions based on negligence. Thus, if Herriott's suit can be properly characterized as a products liability action based on Allied's negligence, her suit is not barred by any statute of repose, and we must deny the motion for summary judgement.

There is an obvious tension between section 13–213(b) and 13–214(b). Unfortunately, the Illinois Supreme Court has yet to articulate an analytical basis for delineating between a product and an improvement to real property. Other state courts, however, have acknowledged the need to make this distinction and have established a framework for doing so. *See, e.g., Ritter v. Abbey–Etna Mach. Co.*, 483 N.W.2d 91, 94 (Minn.App.1992) (acknowledging the need to distinguish between products and improvements to real property in order to avoid "disruption" of product liability law); *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 836–839 (Mo.1991) (en banc) (acknowledging the need to distinguish between "manufacturers and sellers of products" and those who engage in "the design, planning and construction of improvement to real estate").

The Missouri Supreme Court, in *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822 (Mo.1991), adopted what it refers to as an "activity analysis." *Blaske*, 821 S.W.2d at 837 (citation omitted). This activity analysis is significant because it does not focus on the inherent nature of the item that injured the plaintiff but rather on the nature of the work that the defendant engaged in. Essentially, Missouri's activity analysis provides manufacturers of products protection under the statute of repose when they engage in "substantial participation at the construction site in signifi-

cant activities in installing or incorporating" their product into the real property, or, alternatively, if they custom make their product away from the construction site specifically for a particular project and then install this product at the site. *Id.* at 837–38.

 We find this analysis useful and believe that the Illinois Supreme Court would as well. Indeed, such an analysis is consistent with the underlying purpose of section 13–214(b) which is to protect the "design, construction, and supervision of construction" that "architects, engineers, and others in the construction industry" are responsible for. *Adair*, 541 F.Supp. at 1124 (applying Illinois law); *cf. St. Louis*, 163 Ill.Dec. at 144–45, 581 N.E.2d at 95–96 (focusing on the entire nature of defendant's work in concluding that defendant fell within the class of individuals protected under the statute of repose and disregarding the characterization of the item in question as a "product"). As such, we reject Herriott's suggestion that principles of the law of fixtures should be used for distinguishing between products and improvements to real property. Illinois courts have consistently rejected any reference to the law of fixtures. *See, e.g., Hilliard*, 834 F.2d at 1355; *Cross*, 145 Ill.Dec. at 934, 557 N.E.2d at 913; *St. Louis*, 163 Ill.Dec. at 144–45, 581 N.E.2d at 95–96.

In applying the activity analysis, it becomes clear that Allied's Larry–Car constitutes an improvement to real property. It is beyond doubt that Allied substantially participated at the construction site and indeed was primarily responsible for the construction of the coke processing system of which its Larry–Car was an integral part. As such, contrary to Herriott's contention, Allied's conduct was more akin to that of an architect or general contractor who designs a specialized product than that of a manufacturer whose generic product is incorporated into a construction project. Thus, we also reject Herriott's argument that *Hilliard* is distinguishable because the defendant's role there was "very similar to that of an architect or a general contractor." Thus, the Larry–Car is not a "prod-

uct" for purposes of this case but rather falls squarely within the definition of improvement to real property.

We also find Herriott's reliance on *Boddie v. Litton Unit Handling Systems*, 118 Ill.App.3d 520, 74 Ill.Dec. 112, 455 N.E.2d 142 (1st Dist.1983), to be misplaced. In *Boddie*, an Illinois Appellate Court reversed an Illinois circuit court decision that found a conveyor system to be an improvement of real property within the meaning of section 13–214(b). *Boddie*, 74 Ill.Dec. at 115, 455 N.E.2d at 145. The court held that the conveyor system was "a product subject to the doctrine of strict products liability." *Id.*, 74 Ill.Dec. at 119, 455 N.E.2d at 149. The court reasoned that only those items which were "an indivisible part of the building structure itself, such as the bricks, supporting beams and railings" fall outside the products liability doctrine and could constitute an improvement to real property. Subsequent decisions by the Illinois Appellate Court and the Seventh Circuit, however, have tacitly rejected *Boddie*. *See Hilliard v. Lummus Co., Inc.*, 834 F.2d 1352, 1354 (7th Cir.1987); *St. Louis v. Rockwell Graphic Systems*, 220 Ill.App.3d 704, 163 Ill.Dec. 142, 145, 581 N.E.2d 93, 96 (1st Dist.1991); *Billman v. Crown–Trygg Corp.*, 205 Ill.App.3d 916, 150 Ill.Dec. 776, 563 N.E.2d 903 (1st Dist. 1990); *Cross v. Ainsworth Seed Co.*, 199 Ill.App.3d 910, 145 Ill.Dec. 927, 934, 557 N.E.2d 906, 913 (4th Dist.1990); *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill.App.3d 610, 91 Ill. Dec. 267, 483 N.E.2d 613 (1st Dist.1985). As such, reliance on *Boddie* is misplaced. Therefore, we grant Allied's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.