MARK ADCOCK, Plaintiff-Appellant, v. MONTGOMERY ELEVATOR COMPANY, Defendant-Appellee.

First District (1st Division)    No. 1—93—3378

Opinion filed August 21, 1995.

Demos & Burke, of Chicago (William J. Burke and W. Mark Sickles, of counsel), for appellant.

Menges, Mikus & Molzahn, of Chicago (Charles P. Menges and Steven P. Rouse, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Mark Adcock, appeals an order of the circuit court of Cook County, granting summary judgment in favor of defendant, Montgomery Elevator Company, in an action for negligence. On appeal, plaintiff contends that: (1) the trial court erred in determining that his negligence action is barred by the construction statute of repose (735 ILCS 5/13—214(b) (West 1992)); and (2) the construction

statute of repose violates the open courts provision of the Illinois Constitution. For the following reasons, we affirm.

The following facts are relevant to this appeal. In 1972, defendant manufactured and installed an escalator at O'Hare International Airport, Chicago (O'Hare). On April 19, 1989, plaintiff was a passenger on the escalator when it stopped abruptly, and plaintiff was thrown forward and down the escalator.

Plaintiff brought an action against defendant in two counts, alleging negligence and strict product liability.[1] In his negligence count, plaintiff alleged that the escalator braking system was defectively designed, causing the escalator to stop suddenly, throwing passengers forward.

Defendant filed a motion for summary judgment, arguing that plaintiff's negligence allegation was barred by the construction statute of repose. (735 ILCS 5/13—214 (West 1992).) Following a hearing, the trial court granted defendant's motion. Plaintiff's timely appeal followed.

Plaintiff contends that the statute of repose at section 13—214(b) should not bar his claim because defendant is not within the class of persons the legislature intended to protect. Plaintiff argues alternatively that the escalator is a standardized product and therefore it does not fall within the scope of section 13—214(b).

Our standard of review of the circuit court's decision to grant summary judgment is *de novo.* (*Travelers Insurance Co. v. First National Bank* (1993), 250 Ill. App. 3d 641, 645, 621 N.E.2d 209.) Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992).) Summary judgment is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt the movant's right to relief. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Prodromos v. Forty East Cedar Condominium Association* (1994), 264 Ill. App. 3d 363, 636 N.E.2d 846.

■ Section 13—214(b) provides in pertinent part:

"No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real prop-

---

[1]Plaintiff's product liability count has been dismissed, and plaintiff does not appeal its dismissal.

erty after 10 years have elapsed from the time of such act or omission." (735 ILCS 5/13—214(b) (West 1992).)

Whether a manufacturer is afforded protection under section 13—214(b) is determined by inquiring: (1) whether the product at issue constitutes an improvement to real property and, if so, (2) whether the manufacturer falls within the activities enumerated in the statute. (*St. Louis v. Rockwell Graphic Systems, Inc.* (1992), 153 Ill. 2d 1, 3, 605 N.E.2d 555.) An "improvement" "is an addition to real property amounting to more than mere repair or replacement, and which substantially enhances the value of the property." *Continental Insurance Co. v. Walsh Construction Co.* (1988), 171 Ill. App. 3d 135, 140, 524 N.E.2d 1131.

■ Plaintiff concedes that the escalator is an improvement to real property. However, plaintiff argues that legislative history reveals that defendant is not protected under section 13—214(b) because the statute intends to protect only architects, contractors and engineers, and not manufacturers of defective products.

The fundamental principle of statutory construction is that courts are to give effect to the intent of the legislature. (*In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, 246, 641 N.E.2d 440.) The first step in determining legislative intent is to look at the plain meaning of the statutory language. (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 283, 641 N.E.2d 402.) Courts cannot declare that the legislature did not mean what the plain language of the statute imports. *Zimmer v. Willowbrook* (1993), 242 Ill. App. 3d 437, 610 N.E.2d 709.

In support of his contention, plaintiff cites the following portions of debates in the Illinois General Assembly:

> "This bill would provide for an eight year statute of limitations against construction of improvements to real property by architects, contractors and engineers.
>
> * * *
>
> *** [W]e have enacted the products liability statute of limitations and a statute of limitations for physicians. In light of that background, this seems like a reasonable thing to do to protect those who construct improvements to real property." (81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 29-30 (statements of Representative Dunn).)

However, the record of the same House debates also shows the following exchange between Representatives Dunn and Brummer:

> "Brummer: And it would apply to the architects and engineers only, not to the contractor?
>
> Dunn: No. It would apply to the architect, the engineer, the contractor, anyone who is involved in the, in the [sic] planning,

supervision, or the construction of the improvement to real property." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 31 (statements of Representatives Brummer and Dunn).

Contrary to plaintiff's contention, the plain language of the statute shows that a person is protected, not based upon his profession, but upon his performance of any of the activities enumerated therein. "[M]ere labels are not dispositive." *Garner v. Kinnear Manufacturing Co.* (7th Cir. 1994), 37 F.3d 263, 268; *Hausman v. Monarch Machine Tool Co.* (7th Cir. 1993), 997 F.2d 351, 353.

■ Illinois Federal courts utilize a test to determine whether a manufacturer's activities are protected under the statute, originally set forth by the Missouri Supreme Court in *Blaske v. Smith & Entzeroth, Inc.* (Mo. 1991), 821 S.W.2d 822. This "activity analysis" protects manufacturers of products under section 13—214(b) when they engage in "substantial participation at the construction site in significant activities in installing or incorporating" their product into the real property or, alternatively, if they custom make their product away from the construction site specifically for a particular project and then install this product at the site. *Blaske*, 821 S.W.2d at 837-38; *Witham v. Whiting Corp.* (7th Cir. 1992), 975 F.2d 1342; *Herriott v. Allied-Signal, Inc.* (N.D. Ill. 1992), 801 F. Supp. 52.

In *Herriott*, the defendant, Allied, assembled and constructed two batteries of coke ovens in a steel manufacturing plant between 1953 and 1957, including a coal-charging machine known as a "Larry-Car," which weighs 30 tons and is 12 feet high, 20 feet long and 35 feet wide. The plaintiff's decedent was killed while working around and upon the Larry-Car in February 1989, and plaintiff brought an action against Allied alleging negligence in the design and manufacture of the Larry-Car. Allied filed a motion for summary judgment, arguing that the plaintiff's claim was barred by section 13—214(b). *Herriott*, 801 F. Supp. at 53.

In granting summary judgment for Allied, the court adopted the activity analysis, finding the approach consistent with the underlying purpose of section 13—214(b). The court stated, "We find this analysis useful and believe that the Illinois Supreme Court would as well." (*Herriott*, 801 F. Supp. at 58.) The court explained that because Allied substantially participated at the construction site and was primarily responsible for the construction of the coke processing system of which the Larry-Car was an integral part, Allied's conduct was more akin to that of an architect or general contractor who designs a specialized product than that of a manufacturer whose generic product is incorporated into a construction project. *Herriott*, 801 F. Supp. at 58.

Subsequently, in *Witham v. Whiting* (7th Cir. 1992), 975 F.2d 1342, the United States Court of Appeals addressed a negligence claim against the manufacturer of a 40-ton main hoist crane, which the manufacturer custom built for a steel manufacturing plant and which was installed in 1967. Although the manufacturer-defendant did not personally install the crane, it provided specific instructions for installation, including building dimensions and clearances, and inspected the crane after installation to verify that it was operational. The plaintiff was injured while working the crane in 1988. In applying the activity analysis and affirming summary judgment in favor of the defendant, the court relied upon *Herriott* and *Blaske*, finding plaintiff's description of the crane as a "mass-produced product" specious. The court explained:

> "Whiting did not place the crane into the 'stream of commerce.' It did not simply pluck the crane from its inventory and ship it to Allied. Instead, it specially manufactured the crane for Allied based on information Allied provided about its plant." *Witham*, 975 F.2d at 1347.

■ Similarly, in the present case, the record shows that defendant designed, manufactured, and installed the escalator at issue in 1972, performing no repairs on the escalator after the expiration of a six-month service policy which terminated on June 15, 1973. The record further reveals defendant's substantial on-site activity in installing the escalator, including over 60 man hours to install conduit wiring and the escalator skirt and bases. Applying the activity analysis to the present case, it is clear that defendant is protected under section 13—214(b).

■ Plaintiff further contends that defendant is exempt from protection under section 13—214(b) because the escalator is a standardized, mass-produced product. We find plaintiff's contention unavailing. Plaintiff has conceded that the escalator is an improvement to real property; he cannot support his contentions with citation to the record or to any authority; and he failed to raise this argument in the trial court.

Because plaintiff cannot show that the legislature did not intend for section 12—314(b) to protect defendant, the manufacturer who installed the escalator, we find that the trial court properly granted summary judgment in favor of defendant.

■ Plaintiff further contends that section 13—214 violates the open courts provision of the Illinois Constitution. Article I, section 12, provides:

> "Every person shall find a certain remedy in the law for all injuries and wrongs which he receives to his person, privacy, prop-

erty or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, § 12.

Plaintiff argues that similar statutes have been struck down in other States because they unconstitutionally eliminated a common law remedy. Plaintiff cites as example the case *Overland Construction Co. v. Sirmons* (Fla. 1979), 369 So. 2d 572, wherein the Florida Supreme Court struck down a construction statute of repose similar to section 13—214 on the grounds that prior to enactment of the statute, there existed a common law right for redress against contractors for injury caused by an improvement to real property.

A statute is presumed to be valid, and the burden is on the party challenging it to establish its constitutional invalidity. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082.) As a general rule, courts will not interfere with the legislature's judgment unless classification is clearly unreasonable and palpably arbitrary, and will resolve all reasonable doubts in favor of upholding the validity of the statute. *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 500 N.E.2d 34.

Initially, we note that 32 of the 35 States which enacted statutes of repose for construction litigation have held these statutes constitutional. (*Blaske*, 821 S.W.2d at 827 n.9.) In addition, Illinois courts have repeatedly upheld constitutional challenges to section 13—214. See *Billman v. Crown-Trygg Corp.* (1990), 205 Ill. App. 3d 916, 563 N.E.2d 903 (section 13—214(b) does not violate the equal protection clause of the Illinois and United States Constitutions); *Skinner*, 114 Ill. 2d 252, 500 N.E.2d 34 (section 13—214(a) is not unconstitutional special legislation under Illinois Constitution[2]); *Continental Insurance Co. v. Walsh Construction Co.* (1988), 171 Ill. App. 3d 135, 524 N.E.2d 1131 (section 13—214 does not violate equal protection).[3]

▪ In the present case, the trial court upheld section 13—214(b) based upon the above-cited Illinois authority and upon the constitu-

---

[2]Subsections (a) and (b) of section 13—214 should be construed together because the language in subsection (b) specifically refers to subsection (a). *Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 197, 595 N.E.2d 561.

[3]The plaintiff also argued that section 13—214(b) unconstitutionally abolishes a legal remedy for an injury to property. However, the court determined that the plaintiff had no standing to raise this issue, since its complaint was dismissed on the basis of the two-year limitations period section 13—214(a). *Continental Insurance Co. v. Walsh Construction Co.*, 171 Ill. App. 3d at 1135.

tionality of the comparable Illinois medical malpractice statute of repose *vis-a-vis* the open courts provision. (See *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 424, 490 N.E.2d 665; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 313, 402 N.E. 2d 560.) In addition, we find the analysis of the Missouri Supreme Court instructive. In *Blaske*, the Missouri Supreme Court addressed an "open courts" challenge to the constitutionality of its own construction statute of repose, which also imposes a 10-year time limitation upon actions against architects, engineers, or builders for injuries or deaths caused by defective or unsafe conditions of improvements on real property. The Missouri court explained its open courts provision:

> "It is all too easy to assume that this provision means that a plaintiff can always go to court and obtain a judgment on the claim asserted; it obviously does not mean this. Thus, the major issue in almost every consideration of the open courts provision is to determine exactly where the courts draw the line between the right of the legislature to modify the substantive law to eliminate or restrict some cause of action and the right of an individual litigant to have open access to the courts to obtain some remedy available under the applicable substantive law." (*Blaske*, 821 S.W.2d at 832.)

The *Blaske* court determined that the legislature is not limited in authority to design the framework of the substantive law and that the line must be drawn between a statute that creates a condition precedent to the use of the courts to enforce a valid cause of action, which would violate the open courts provision, and a statute that simply changes the common law by eliminating a cause of action that has previously existed at common law or under some prior statute. The court determined that Missouri's statute of repose did not violate the open courts provision, because it does not bar the courts to a person with a valid cause of action; rather, it modifies the common law to provide that there is no such cause of action. *Blaske*, 821 S.W.2d at 833.

We hold that section 13—214(b) does not violate the open courts provision of the Illinois Constitution because it merely modifies the common law to provide that there is no cause of action against architects, contractors, engineers, and manufacturers involved in the construction of an improvement to real property after 10 years following the completion of construction.

For the reasons stated above, we therefore affirm the judgment of the trial court.

Affirmed.

BUCKLEY and WOLFSON, JJ., concur.