2024 IL App (1st) 231717-U

No. 1-23-1717

Order filed August 20, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MAIESHA ROSE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 8535 |
| | ) | |
| THE RETIREMENT BOARD OF THE FIREMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF CHICAGO, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm the administrative agency's denial of duty disability benefits where the
            evidence supports the agency's determination that plaintiff's shoulder surgery was
            not caused by a duty-related incident.

¶ 2     Plaintiff Maiesha Rose appeals following the circuit court's order sustaining the decision

of defendant, the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago

(Board), denying her claim for duty disability benefits, which was filed pursuant to section 6-151 of the Illinois Pension Code (Code) (40 ILCS 5/6-151 (West 2020)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                         A. Plaintiff's Application for Duty Disability Benefits

¶ 5     Plaintiff was employed by the Chicago Fire Department (CFD) in August 2006. On November 29, 2021, she filed an application for duty disability benefits pursuant to section 6-151 of the Code. She alleged that during retraining on February 18, 2021, she and a partner, Eric Pellerito, performed a "forcible entry evolution" using a Halligan bar. The bar slipped during the exercise, and plaintiff "flew backwards to the ground," hitting her head and shoulder on the concrete floor and losing consciousness for "a few seconds." As a result, she was diagnosed with "Concussion, Post concussion syndrome, rt rotator cuff tendinitis, full thickness rt rotator cuff repair (9/14/21) and migraines." Plaintiff also experienced gaps in short-term memory, sensitivity to lights and loud sounds, which gave her migraines and vertigo, and the inability to lift her right arm to its full potential. Plaintiff alleged her injuries occurred while she was in the performance of duty.

¶ 6                                    B. Exhibits

¶ 7     The record contains a number of exhibits submitted by both the Board and plaintiff. We summarize those exhibits as deemed relevant to the issue on appeal.

¶ 8                                 1. *Plaintiff's Exhibits*

¶ 9     Plaintiff provided physician reports prepared in March and April 2022. A March 10, 2022, report prepared by Adam Yanke, M.D., at Midwest Orthopaedics at Rush University Medical Center (Rush) indicated that plaintiff's diagnosis and/or treatment was "causally related to the

alleged industrial accident," but work restrictions were "off." An email sent from Dr. Yanke's athletic trainer to plaintiff explained that "[c]ausally means that we agree that your injury was caused by the event (the forcible entry drill)."

¶ 10     On March 7, 2022, Matthew Jaycox, M.D., at University Pain Centers reported that plaintiff had a medical history of "[c]hronic R shoulder Pain" and "Migraine," and she was diagnosed with cervical dystonia. In progress notes dated April 4, 2022, Dr. Jaycox stated that plaintiff continued "to endorse right lateral [neck] pain which refers into the anterior shoulder, pain in the clavicle, and 'cold' feeling in her arm." He stated plaintiff's pain was "likely due to her work injury."

¶ 11                              2. *The Board's Exhibits*

¶ 12     The Board's exhibits included a document from the CFD medical division titled "initial lay up interview." The document contains an entry dated November 29, 2006, which states plaintiff felt a "pull" in her right shoulder, went to the Rush emergency room for a sprained right shoulder, and could return to full duty.

¶ 13     A CFD report of injury reflects that on February 18, 2021, plaintiff and Pellerito were performing forcible entry on a simulated door. While they were pulling the Halligan bar lodged in the door, both members slipped and fell to the ground. Plaintiff stated she hit her head and could not get up. An ambulance transported plaintiff to Rush.

¶ 14     The Rush emergency department report dated February 18, 2021, reflects that plaintiff reported having a "minor headache." She denied suffering any back or neck pain, confusion or amnesia, skin break, vision changes, emesis, nausea, or numbness and tingling in the body. The

emergency department performed no procedures and found plaintiff was "Low Risk" and a CT scan was unnecessary. Plaintiff was discharged as "stable."

¶ 15    Medical records soon after February 18, 2021, show that plaintiff received follow-up examinations after reporting continued headaches, migraines, light sensitivity, and a transient black spot in her visual field. A CT scan of her head showed no acute intracranial abnormality. Two neurology reports from the University of Illinois Hospital dated February 24, 2021, reflected that plaintiff was examined for post-trauma headaches, and indicated right sided headaches that "radiate*** to her shoulder."

¶ 16    A May 17, 2021, University of Illinois Hospital orthopedic consultation report reflects that plaintiff was examined based on complaints of right shoulder pain. She had "significant guarding" and pain with attempted shoulder range of motion, which seemed primarily related to biceps tendinopathy, but also likely involvement of the rotator cuff, labrum, and bursa. Physical therapy was recommended.

¶ 17    On May 20, 2021, plaintiff had an MRI scan of her right shoulder. From the MRI, Catherine Kim-Gavino, M.D., noted "[m]oderate tendinosis of the supraspinatus tendon, with multiple tears" and "[m]ild tendinosis of the infraspinatus tendon" with an "articular surface tear within the anterior half of that tendon." She noted that plaintiff's tears were of "indeterminate chronicity."

¶ 18    In a report dated July 22, 2021, Dr. Yanke noted that plaintiff had a "[f]ull thickness rotator cuff tear." Plaintiff had been receiving steroid injections and physical therapy. On September 14, 2021, Dr. Yanke performed surgery to repair the tear in plaintiff's right shoulder rotator cuff. Plaintiff received a series of post-operative examinations, continued receiving steroid injections to treat her shoulder pain, and continued physical therapy. Dr. Yanke noted across multiple reports

that plaintiff had continuing right shoulder pain and discomfort, had no previous history of right shoulder issues, and the tears in her right rotator cuff were "not specified as traumatic."

¶ 19    A progress note dated January 4, 2022, reflects that Eric Ericson, M.D., at EMG Centers of Chicagoland, examined plaintiff and performed an "EMG-NCV" on her right arm. Plaintiff reported that her symptoms "arose after a work injury in February 2021," her right shoulder remained weak, she could not lift her arm "all the way up," she had "throbbing pain" in her right shoulder and an "abnormal sensation" in her neck and arm, and her right hand "goes hot and cold." The EMG of plaintiff's right upper extremity was "[u]nremarkable."

¶ 20    In a letter dated May 31, 2022, Dr. Yanke stated that plaintiff "denies any right shoulder complaints, injuries, or treatment prior to the 2/18/2021 work-related injury." Based on that, along with plaintiff's reported "mechanism" of injury, Dr. Yanke considered plaintiff's "current right shoulder complaints casually [*sic*] related to forcible entry drill."

¶ 21    On June 1, 2022, Dr. Jaycox reported that he had evaluated plaintiff on March 7, 2022, and April 4, 2022, and diagnosed her with cervical dystonia. Dr. Jaycox based the diagnosis on observations that plaintiff had tightness and pain in her right lateral neck into the anterior shoulder, limited lateral bending and rotation of her neck to the left side, and "significant tenderness to palpation in the right posterior triangle of muscles."

¶ 22    In a report dated June 1, 2022, Michael I. Peters, M.D., FAEMS, at Northwestern Medical Group and a medical consultant to the Firemen's Annuity and Benefit Fund of Chicago, stated that he interviewed plaintiff for her duty disability application and reviewed pertinent medical records. He noted that plaintiff had been diagnosed with "cervical dystonia (involuntary neck spasm/pain)," migraines, and rotator cuff tears with decreased range of shoulder motion following surgical repair.

¶ 23    Dr. Peters observed that plaintiff reported "delayed onset right shoulder pain" following the February 2021 fall. He noted that in her March and April 2021 medical follow-ups, plaintiff only reported "mild right shoulder pain," and her right shoulder examination was "normal." She was diagnosed with "partial rotator cuff tears" on May 20, 2021, and had surgical repair on September 14, 2021. Dr. Peters reviewed reports stating that plaintiff's "mechanism of injury was either repeated pulling during the 3 forcible entry evolutions prior to her fall or from a direct contusion to the shoulder when she fell." However, Dr. Peters stated that a direct contusion "would be an unlikely cause of partial rotator cuff tears." Dr. Peters also cast doubt on whether the three prior forcible entry evolutions caused the tears, as plaintiff "did not report shoulder pain immediately after these evolutions." Dr. Peters concluded that plaintiff "presently has limited range of motion and cannot perform full firefighter duties."

¶ 24                              C. Hearing before the Board

¶ 25    On June 15, 2022, the Board held a hearing on plaintiff's application for duty disability benefits.

¶ 26    Plaintiff testified that she was a firefighter EMT from 2006 to 2009 and performed administrative work at headquarters from 2009 to 2021. From February 5 to 18, 2021, she was assigned to Quinn Fire Academy for retraining so she could return to the field. Plaintiff was not worried about returning to the field because she had consistently exercised with an instructor at least twice a week "to stay physically fit."

¶ 27    Plaintiff further testified that her injury occurred on February 18, 2021, during a forcible entry drill, in which she was paired with Pellerito. Plaintiff explained that during forcible entry drills, a simulated locked door was forcibly opened using a Halligan bar, which was a steel bar

inserted into the door and used as leverage to open it. Plaintiff and Pellerito were unable to open their door for 10 to 15 minutes, and so they "married" two Halligan bars for more leverage. While attempting to leverage the door open, the bars "came apart," and they both fell backwards. Plaintiff hit her head on the concrete floor. The next thing she recalled was her instructor Darryl Johnson standing over her and asking if she was okay. An ambulance took plaintiff to Rush.

¶ 28    At Rush, an emergency room doctor told plaintiff to "stay off" work that day. Plaintiff returned to the fire academy but was "laying up," because she was "still having some issues on the right side." The next morning, plaintiff visited the CFD medical division, where she reported swelling on the right side of her head and pain in the right side of her neck, back, and shoulder. Plaintiff described her medical history and course of treatment.

¶ 29    Plaintiff still did not have full range of motion in her right arm, and moving it was painful. She did not feel that she had recovered from the injuries sustained from the forcible entry drill so that she could return to duty with the CFD, and "[e]ach of [her] doctors have agreed that [she] should not return back to fire fighting duties."

¶ 30    Darryl Johnson, CFD Lieutenant EMT, testified that he conducted the forcible entry drill on February 18, 2021. At the time of the drill, plaintiff wore her protective equipment, including her helmet. The two "married" Halligan bars plaintiff used to conduct the drill came apart, and she fell to the ground, landing on her buttocks first and "laid back." Plaintiff's helmet fell off during the momentum when she fell, and she hit her head on the ground. Plaintiff indicated that she was not okay, but did not identify what parts of her body were injured.

¶ 31    Chicago firefighter Stephen Scott added that he watched plaintiff perform the drill, and she slipped and fell because her foot placement was "wrong." As she fell, her arm "went down," she

"caught herself," and landed on her buttocks and back side. Plaintiff indicated that she hit her head and was "hurting." She did not mention any other injuries.

¶ 32    Dr. Peters testified that he reviewed plaintiff's records and spoke with plaintiff on the phone, but did not examine her because of the pandemic. Dr. Peters observed that, the day after the February 2021 fall, plaintiff told CFD Medical that she had shoulder pain, but her examination was "entirely normal." Later, in May 2021, plaintiff had an MRI of her shoulder, which showed "rim rent tears of the supraspinatus and infraspinatus muscles," meaning that two of the muscles in her rotator cuff were "partially torn near where they attach to the bone." Dr. Peters explained that this was generally considered a "chronic degenerative finding." Dr. Peters testified there was "a delayed onset of any type of shoulder finding, which would speak against an acute rotator cuff injury and more of a slowly progressive degenerative problem."

¶ 33    Dr. Peters discussed plaintiff's diagnosis of cervical dystonia, which he observed "seemed to start a year after the fall." Dr. Peters explained that cervical dystonia involved an "involuntary permanent sort of slowly progressive spasm of the neck" and was generally considered to have a "genetic basis." He stated that "[w]hether traumatic injury causes this problem is considered to be controversial" and there was "no definite literature to support that trauma would cause this problem." Dr. Peters opined that, because the onset of cervical dystonia occurred a "significantly *** long period of time after [plaintiff's] initial head injury," it was more likely than not unrelated to the fall. He also stated that the diagnosis would not be an expected result from falling on your shoulder. Rather, the type of tears seen in plaintiff's shoulder was "generally considered to be slowly progressive chronic tears." He opined that plaintiff needed surgery due to "chronic degenerative shoulder problems," and the results of the surgery caused her inability to return to

work, as there was "no question" that she lacked adequate range of motion or strength to do the work.

¶ 34    The Board's trustees voted to deny the requested duty disability benefits. The Board found that the "weight of the medical evidence in the record," including the manner of plaintiff's fall, the lack of findings of a shoulder injury immediately after the incident, and the delay in reporting shoulder symptoms, showed that plaintiff had "degenerative pre-existing tears in her right shoulder." The Board found Dr. Peters credibly opined that plaintiff's surgery on September 14, 2021, was "the cause of her current limitations in the functioning of her right shoulder," and that the fall on February 18, 2021, did not cause the need for that surgery, but "was necessitated by the degenerative condition she already had in her right shoulder prior to February 18, 2021.

¶ 35            D. Administrative Review Proceedings before the Circuit Court

¶ 36    Plaintiff filed a complaint for administrative review with the circuit court, alleging the Board erred in finding her shoulder issue was "caused by her preexisting degenerative shoulder condition, and not the surgery she underwent following the duty injury on February 18, [2021]." She alleged the Board's finding that the injury was caused by a preexisting condition was "belied by her prior years of performing her duties with the alleged 'degenerative' shoulder, which only became unbearable after her duty injury."

¶ 37    In her brief before the circuit court, plaintiff stated that she had suffered a sprained right shoulder while on duty on November 29, 2006. She asserted that the Board "failed to consider that [she] did in fact sustain a prior duty injury to her right shoulder in November 2006, which likely caused the degeneration leading to her surgery and current disability."

¶ 38    On May 25, 2023, the circuit court entered an order affirming the Board's decision. The court found that the Board's determination of fact that plaintiff's shoulder injury resulted from chronic degeneration and surgery, not from her fall on February 18, 2021, was not against the manifest weight of the evidence. The court also found that plaintiff did not raise before the Board that she had a preexisting 2006 injury that was exacerbated by the February 2021 training incident. The court stated it could not consider new or additional evidence that was not presented to the Board.

¶ 39    Plaintiff filed a motion to reconsider, which the circuit court denied.

¶ 40                                    II. ANALYSIS

¶ 41    On appeal, plaintiff asserts that the Board's denial of duty disability benefits was against the manifest weight of the evidence, as it did not consider evidence that her current shoulder injury likely resulted from a duty-related injury to her right shoulder sustained in November 2006.

¶ 42    Plaintiff sought duty disability benefits under section 6-151 of the Code. Section 6-151 provides that an "active fireman" who becomes disabled "as the result of a specific injury, or of cumulative injuries, or of sickness incurred in or resulting from an act or acts of duty" is entitled "to receive duty disability benefit during any period of such disability for which he does not receive or have a right to receive salary, equal to 75% of his salary at the time the disability is allowed." 40 ILCS 5/6-151 (West 2020). This court has interpreted the phrase "incurred in or resulting from an act or acts of duty" to include circumstances in which a plaintiff's injury "was a cause of his disability and that he aggravated a preexisting injury as the result of an act or acts of duty." *Howe*, 2015 IL App (1st) 141350, ¶ 55.

¶ 43    On appeal from a decision of the circuit court on a petition for administrative review, we review the decision of the Board, not that of the circuit court. *Abbate v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 2022 IL App (1st) 201228, ¶ 32. Our standard of review depends upon the nature of the question we are addressing, as we review questions of law under the *de novo* standard and questions of fact under the manifest weight standard. *Siwinski v. Retirement Board of Firemen's Annuity & Benefit Fund of City of Chicago*, 2019 IL App (1st) 180388, ¶ 25. "When the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, a mixed question of law and fact exists and the standard of review is whether the Board's determination is clearly erroneous." (Internal quotation marks omitted.) *Id.*

¶ 44    Here, plaintiff disputes the factual findings of the Board, *i.e.*, its findings that her disability did not result from any duty-related injury relating to her February 18, 2021, fall but rather was the result of surgery performed to address a preexisting degenerative condition in her right shoulder. See *id.* ¶ 26. We therefore agree with the parties that the manifest weight of the evidence standard applies to our review.

¶ 45    An agency's factual finding is against the manifest weight of the evidence "if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, and not based upon any evidence." *Id.* ¶ 27. Stated differently, "[i]f the record contains *any* evidence to support the agency's decision, it should be affirmed." (Emphasis added.) *Swoope v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 323 Ill. App. 3d 526, 529 (2001). We may not consider new or additional evidence beyond what was originally presented to the Board, and the "findings and conclusions of the administrative agency on questions of fact shall be held

to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2020). In reviewing an administrative agency's factual determinations, we will not weigh the evidence or substitute our judgment for that of the administrative agency. See *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). "Under any standard of review, a plaintiff in an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007).

¶ 46    As an initial matter, we note that plaintiff does not challenge the Board's finding that her disability resulted from the September 2021 surgery to treat a chronic shoulder condition. She also does not challenge the denial of duty disability benefits based on any head-related condition sustained from the fall on February 18, 2021. Review of those findings are therefore arguably forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued in the opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing). Plaintiff solely argues on appeal that the Board failed to consider that plaintiff sustained a prior duty injury to her right shoulder in November 2006, which "likely" caused the degeneration leading to her surgery and current disability.

¶ 47    We find that the Board's decision to deny duty disability benefits was supported by evidence in the record. Plaintiff filed an application for duty disability benefits listing the incident on February 18, 2021, in which she fell while performing a forcible entry drill, as causing her duty injury. She stated in her application that, as a result, she underwent right rotator cuff repair on September 14, 2021. The medical records reflect that after her fall on February 18, 2021, plaintiff was brought to the emergency room complaining of headaches, but discharged as stable with a finding of no concerns that would require a CT scan. The record does not reflect that she raised

any shoulder issues on the day of the fall. Also, she denied that she had any issues in her neck or shoulder prior to that fall.

¶ 48 Months after the fall, plaintiff was discovered to have rim tears in her right shoulder and eventually had rotator cuff repair surgery on September 14, 2021. She received a diagnosis of cervical dystonia after the surgery, based on the limited range of motion in her right shoulder and pain in her neck and right shoulder. While plaintiff did present reports of Drs. Yanke and Jaycox opining that plaintiff's shoulder condition was, or likely was, the result of her fall in February 2021, Dr. Kim-Gavino opined that plaintiff's condition was of "indeterminate chronicity" and not likely due to a traumatic incident. Dr. Peters opined that plaintiff's shoulder surgery to treat the rim rent tear had resulted from "chronic degradation" and was not acute in nature, *i.e.*, it was not caused by a traumatic injury. He further opined that plaintiff's post-operative diagnosis of cervical dystonia was generally considered to have a "genetic basis," and there was "no definite literature to support that trauma would cause this problem."

¶ 49 When confronted with the factual determination of whether plaintiff's shoulder condition leading to her surgery was more likely degenerative, taking place over a long period of time, or caused by a traumatic injury, it was the Board's function to resolve the conflict in medical evidence. See *Swanson v. Board of Trustees of Flossmoor Police Pension Fund*, 2014 IL App (1st) 130561, ¶ 31. We cannot reweigh the evidence and overturn the Board's credibility determinations. *City of Belvidere*, 181 Ill. 2d at 205. Rather, we must affirm the Board's decision where, as here, there is "*any* evidence to support the agency's decision." (Emphasis added.) *Swoope*, 323 Ill. App. 3d at 529. The evidence in the record contains opinions from medical professionals supporting the Board's conclusion that plaintiff failed to show an act of duty caused

her degenerative shoulder condition. As such, we cannot find the Board's conclusion was "unreasonable, arbitrary, and not based upon any evidence," or that the opposite conclusion was "clearly evident." *Siwinski*, 2019 IL App (1st) 180388, ¶ 27.

¶ 50    Plaintiff asserts that the Board failed to consider evidence that her shoulder condition was the result of a duty-related injury that occurred in November 2006. She argues that the Board erroneously "focused solely on [her] fall on February 18, 2021." However, plaintiff only listed on her application the February 18, 2021, fall and never asserted before the Board, or presented any evidence, that any other duty-related incident caused her disability. While the record reflects that plaintiff had a sprained right shoulder on November 29, 2006, the record is devoid of any details regarding that injury, *i.e.*, how it occurred, how it was treated, or the severity of the issue. There is also no indication that plaintiff experienced any complications following the November 2006 shoulder issue. To the contrary, as we have stated, the record shows that plaintiff repeatedly denied having any issues with her right shoulder prior to her February 18, 2021, fall.

¶ 51    If in fact plaintiff's shoulder complications began with the unspecified event that occurred in November 2006, it was plaintiff's burden to present that argument, with supporting evidence, to the Board. *Wade*, 226 Ill. 2d at 505. Plaintiff failed to meet her burden, as she presented no argument or evidence that her current disability was the result of a duty-related injury that occurred in November 2006. Plaintiff now essentially attempts to shift that burden onto the Board, suggesting it was the Board's burden to inquire further into the November 2006 incident to determine whether it was a causative factor leading to the 2021 rotator cuff repair surgery, which resulted in her current disability. But plaintiff, not the Board, must show that a duty-related accident was a causative factor contributing to her current disability. *Id.* Therefore, whether any

2006 injury was a causative factor of her current disability cannot be raised for the first time on administrative review, and we cannot find that the Board erred in failing to consider an argument that was not raised before it. See *Stone Street Partners, LLC v. City of Chicago*, 2017 IL App (1st) 133159, ¶ 20 (arguments or issues not raised in an administrative hearing may not be raised for the first time on administrative review).

¶ 52    For the foregoing reasons, we affirm the judgment of the circuit court affirming the Board's decision denying plaintiff duty disability benefits.

¶ 53    Affirmed.